### DR. PEPPER BOTTLING CO. OF MISS., PETITIONER, v. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 109125.    Promulgated November 19, 1942.

*Allen Wight*, Esq., for the petitioner.
*Frank B. Appleman*, for the respondent.

**OPINION.**

OPPER, *Judge:* It is by now established that under the 1936 and subsequent revenue acts treatment of a corporation's dealings in its own stock is validly prescribed by respondent's amended regulations. The construction of that regulation, however, creates the present problem. It reads as follows:

ART. 22 (a)-16. [Regulations 94.] *Acquisition or disposition by a corporation of its own capital stock.*—Whether the acquisition or disposition by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction, which is to be ascertained from all its facts and circumstances. The receipt by a corporation of the subscription price of shares of its capital stock upon their original issuance gives rise to neither taxable gain nor deductible loss, whether the subscription or issue price be in excess of, or less than, the par or stated value of such stock.

But if a corporation deals in its own shares as it might in the shares of another corporation, the resulting gain or loss is to be computed in the same manner as though the corporation were dealing in the shares of another. So also if the corporation receives its own stock as consideration upon the sale of property by it, or in satisfaction of indebtedness to it, the gain or loss resulting is to be computed in the same manner as though the payment had been made in any other property. Any gain derived from such transactions is subject to tax, and any loss sustained is allowable as a deduction where permitted by the provisions of the Act.

The regulation was obviously derived from statements in *Commissioner* v. *Woods Machine Co.* (C. C. A., 1st Cir.), 57 Fed. (2d) 635; certiorari denied, 287 U. S. 613. In addition to the language incorporated in the regulation in practically the same words, that opinion also asserted: "If it was in fact a capital transaction, i. e., if the shares were acquired or parted with in connection with a readjustment of the capital structure of the corporation, the Board rule [that no gain or loss results] applies." It is not unreasonable to assume that this concept also inheres by inference in the regulation.

The reported cases dealing with the question under the amended regulations are uniform in concluding that taxable gain was the consequence of the respective situations there considered. But we do not think it follows that the existence of circumstances authorizing a con-

trary result is impossible or that, if such circumstances arise, the corporation must nevertheless be treated as having secured a taxable gain. The opinion in each case considers and discusses the question, although ultimately rejecting the result on its own facts, and indeed such a principle would contradict the alternative character of the regulation itself and render reference to the "real nature of the transaction" meaningless.

In disposing of the somewhat related question of whether transfer of its stock to a corporation by one of its stockholders is a sale or a distribution in partial liquidation, the Board has laid emphasis upon the corporate purpose in acquiring the stock and its intention with respect to reissue. Thus, in *W. C. Robinson*, 42 B. T. A. 725, 737, the Board, in concluding that the transaction in question was an exchange, pointed out that "The evidence discloses that they [the acquired shares] were placed in the treasury with the intention that they would be used to purchase additional properties  *  *  *." And in *William A. Smith*, 38 B. T. A. 317, 321, which reached a similar result, *Northern Trust Co., Trustee*, 20 B. T. A. 866, was distinguished by pointing out that there "the evidence, thus, clearly established that the intention of the corporation was not to purchase its stock but to liquidate it."

We view these decisions as establishing the propositions, first, that whether a corporation's dealings in its own stock result in tax consequences to the corporation, depends upon the character and purpose of the purchase and of the sale and their relationship to each other; second, that if their true nature is a readjustment of capital, no taxable gain or loss occurs even though the result is more than a mere bookkeeping process and the outcome may in a real sense be a benefit or detriment to the corporation's economic position; and, third, that one test of the true nature of the transaction is whether the corporation has dealt in its stock in the same way that it would in the stock of another corporation. This proceeds from a mere matter of construction and entirely without reference to any constitutional question of the power to tax such transactions in a different context of statutory interpretation. See *Koshland* v. *Helvering*, 298 U. S. 441; *Helvering* v. *Gowran*, 302 U. S. 238.

The present record leaves no doubt that petitioner's original purchase of its stock had as its object an agreed readjustment of the corporation's capital structure. The interested parties had arrived at a decision calling for equal division in the control of the company. One of the participants was financially unable to pay for his allotted half of the then outstanding shares. The result was the agreement to have the corporation purchase the difference, thus maintaining the balance among the stockholders. There is no suggestion of any other purpose and no inference that it was significant whether the stock was

retained in the corporation's treasury or definitively retired. The same result could have been reached by a simultaneous reduction in the authorized capital of the corporation; but the failure to adopt that procedure in no way interfered with the accomplishment of the immediate end or indicates to us that there was any other.

Two years later the corporation found itself in need of funds in order to distribute a dividend made advisable by the undistributed surplus tax. A series of steps was thereupon undertaken, the ultimate effect of which was to sell to the corporation's existing stockholders an additional amount of stock. Again it seems to us clear that this was a purpose dictated by the necessity of making a readjustment of the corporation's capital. That the same stock which had previously been purchased and held in the treasury was used, is entirely without significance. If the original shares had been canceled, and the authorized capital reduced, that process could have been reversed and new stock authorized and sold. The result at the beginning and end would have been the same.

Nor was this an operation which could as well have been accomplished by a dealing in the stock of another corporation. Clearly, the purchase of other corporate securities would not have crystallized the shareholders' interests. Equally, the sale of other corporate stock, while it might have raised the necessary cash, would not have increased the corporation's capital, nor left its gross assets undiminished, as the sale of its own stock actually did. We think this embodies a transaction the real nature of which denies the realization of taxable gain under the regulation.

The cases which have passed upon this question do not conflict with such a conclusion. In *Allen* v. *National Manufacture & Stores Corporation*, 125 Fed. (2d) 239; certiorari denied, 316 U. S. 679, the corporation had purchased its stock on "50 percent margin." In *Trinity Corporation*, 44 B. T. A. 1219, the stock in question was received in an exchange and the conclusion reached was that the taxpayer there had obtained a gain on the exchange which was taxable; in other words, the profit on the property exchanged and not on the stock acquired was there involved, a situation expressly covered by the regulation. In *Brown Shoe Co.*, 45 B. T. A. 212, 217, "the capital structure of petitioner was not affected. No capital transaction, in fact, occurred. It is admitted that the stock was purchased for resale and sold." *Edison Brothers*, 45 B. T. A. 472, is to the same effect. And in *Pittsburgh Laundry, Inc.*, 47 B. T. A. 230, 234, "the stock was purchased and was resold for the profit to be made. That such profit was intended to be used, and was used to retire a different grade of stock, seems to us not to detract from the commercial character of the purchase and sale of

the common stock. The profit might well have been made from purchase and sale of stock in some other corporation."

Here, on the other hand, the facts show that the profit secured by petitioner was a mere incident. The original purchase of the stock was entirely without reference to any future disposition and in fact the record shows that the interested parties affirmatively contracted against any resale, which would indeed have nullified the purpose of the purchase. The acquisition in one year and the sale several years later were in no way related in plan or object and had no connection save that their subject matter was the same stock. Both the purchase and the sale were made for purposes of readjusting petitioner's capital and the desired result in neither case could have been accomplished by a dealing in the stock of some other corporation. Respondent's determination seems to us to have been an erroneous application of his own regulation.

*Decision will be entered under Rule 50.*