BROCKMAN OIL WELL CEMENTING COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 111212. Promulgated June 22, 1943.

*R. B. Cannon, Esq.*, for the petitioner.
*Sam G. Winstead, Esq.*, for the respondent.

### OPINION.

BLACK, *Judge:* The Commissioner has determined a deficiency of $801.50 in petitioner's income tax for its fiscal year ended April 30, 1940. The deficiency results from several adjustments made by the Commissioner in the income tax return filed by petitioner for the period in question. The only one of these adjustments which petitioner contests is adjustment (a), which consisted of adding $6,225 as capital gains to the net income reported by petitioner on its return. The Commissioner explained this adjustment in his deficiency notice as follows:

(a) It has been found that you made a taxable gain of $6,225.00, which was not reported on the return for the taxable year ended April 30, 1940, on the resale of stock of your company purchased on January 23, 1939 for $375.00 and sold on May 31, 1939 for a consideration of $6,600.00.

Petitioner by an appropriate assignment of error contests the correctness of adjustment (a). If petitioner is sustained in this assignment of error there will be a small overpayment, due to the other adjustments made by the Commissioner, which are not in issue. On the other hand, if petitioner's assignment of error is not sustained and it is held that the transaction in question gave rise to taxable gain, it is agreed that the deficiency determined by the Commissioner is correct.

We find the facts as stipulated.

The petitioner is a corporation chartered under the laws of Texas on May 1, 1936, with principal office at Corpus Christi, Texas. The return for the period here involved was filed with the collector for the first collection district of Texas at Austin, Texas.

Petitioner is engaged in the business of "cementing" oil and gas wells for others under contract, or for a stated consideration. This

business is highly technical in nature and requires experienced personnel and a certain amount of capital.

For all years since its organization the capital stock of petitioner has been closely held. All of the stockholders have been actively engaged in the conduct of its affairs and the stockholders furnished much of the technical skill and the experience indispensable to the conduct of petitioner's business.

In the early part of petitioner's fiscal year ended April 30, 1939, J. V. Calvert was the owner of 12½ shares, being one-sixth of the total of 75 shares of the authorized and issued capital stock of petitioner. Calvert desired to sever his relations with petitioner and the remaining stockholders of petitioner desired that this be done. To accomplish this on January 23, 1939, which was within petitioner's fiscal year ended April 30, 1939, petitioner paid over to Calvert a portion of its net assets valued at $375, which represented approximately one-sixth of the then net worth of petitioner, and in consideration therefor Calvert surrendered to petitioner one-sixth of petitioner's issued and outstanding capital stock. Such stock was carried on petitioner's books as treasury stock.

Thereafter petitioner's business needed additional working capital to care for its increased business. This was obtained from one of its shareholders, E. E. Swift, in the form of loans evidenced by the promissory notes of petitioner for sums in excess of $30,000.

On May 31, 1939, which was within petitioner's fiscal year ended April 30, 1940, the 12½ shares of its capital stock then held in petitioner's treasury, which had been obtained from Calvert, were issued to E. E. Swift by petitioner and the notes held by E. E. Swift credited with the sum of $6,600, an amount equal to one-sixth of the net assets of petitioner corporation after the issuance of the said stock and the entry of the credit on the Swift indebtedness.

Petitioner was assessed $1,384.48 income tax for the fiscal year ended April 30, 1940, which it paid in two installments as follows: June 12, 1940, $692.24; July 12, 1940, $692.24.

The petition in this proceeding was filed May 25, 1942.

The parties are in agreement that the applicable regulation is section 19.22 (a)–16 of Regulations 103, which deals with the acquisition or disposition by a corporation of its own capital stock. It reads as follows:

Whether the acquisition or disposition by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction, which is to be ascertained from all its facts and circumstances. The receipt by a corporation of the subscription price of shares of its capital stock upon their original issuance gives rise to neither taxable

gain nor deductible loss, whether the subscription or issue price be in excess of, or less than, the par or stated value of such stock.

But if a corporation deals in its own shares as it might in the shares of another corporation, the resulting gain or loss is to be computed in the same manner as though the corporation were dealing in the shares of another. So also if the corporation receives its own stock as consideration upon the sale of property by it, or in satisfaction of indebtedness to it, the gain or loss resulting is to be computed in the same manner as though the payment had been made in any other property. Any gain derived from such transactions is subject to tax, and any loss sustained is allowable as a deduction where permitted by the provisions of the Internal Revenue Code.

Since in the instant case we are not dealing with an original issue of capital stock and it is not contended that in the transaction upon the basis of which respondent has determined that a taxable gain was realized, the taxpayer received its stock either as consideration upon the sale of property by it or in satisfaction of indebtedness to it, it is clear that the regulation is inapplicable unless this Court should find that petitioner was dealing "in its own shares as it might in the shares of another corporation."

Petitioner relies upon *Dr. Pepper Bottling Co. of Mississippi*, 1. T. C. 80. now on review, C. C. A., 5th Cir. In that case we held that the purchase by the taxpayer corporation of shares of its own stock pursuant to an agreement to effect permanent equal division of stock control, and the resale thereof two years later at an increase over the amount paid, occasioned by the taxpayer's need of readjusting its capital. did not result in taxable gain.

In that case, after discussing certain cases, we said:

We view these decisions as establishing the propositions, first, that whether a corporation's dealings in its own stock result in tax consequences to the corporation depends upon the character and purpose of the purchase and of the sale and their relationship to each other; second, that if their true nature is a readjustment of capital, no taxable gain or loss occurs even though the result is more than a mere bookkeeping process and the outcome may in a real sense be a benefit or detriment to the corporation's economic position; and, third, that one test of the true nature of the transaction is whether the corporation has dealt in its stock in the same way that it would in the stock of another corporation. * * *

Respondent contends that *Dr. Pepper Bottling Co. of Mississippi* was wrongly decided. and that, even it if be assumed that it was correctly decided. nevertheless it is distinguishable from the instant case on its facts. Respondent contends that in the *Dr. Pepper Bottling Co.* case considerable evidence was adduced at the hearing purporting to show an intention to readjust the capital structure of the taxpayer corporation and that the Tax Court there found as a fact that "Both the purchase and the sale were made for purposes of readjusting

petitioner's capital and the desired result in neither case could have been accomplished by dealing in the stock of some other corporation."

In the instant case respondent contends that evidence of intention to readjust capital structure is absent. Furthermore, he says that petitioner here could have accomplished the same result by dealing in the stock of some other corporation. We do not agree to the correctness of either contention.

While it is of course clear that the facts and circumstances of the transactions we have before us in the instant case are different in some respects from what they were in the *Dr. Pepper Bottling Co.* case, we do not think those differences are sufficient to justify us in reaching a different conclusion. Just as we decided in the *Dr. Pepper Bottling Co.* case that the gain which resulted from a purchase by the corporation of certain shares of its capital stock and their subsequent resale to stockholders was not one where the corporation was "dealing in its own shares as it might in the shares of another corporation", we think we must so decide in the instant case.

In the instant case the facts are stipulated and, of course, we must decide the case upon these facts. From the stipulated facts it seems entirely clear that when on January 23, 1939, petitioner acquired from one of its stockholders, J. V. Calvert, 12½ shares of its authorized and issued capital stock by paying over to him a ratable portion of the corporation's net assets, which represented approximately one-sixth of the then net worth of petitioner, it was not acquiring the shares as it would acquire the shares of another corporation for a subsequent resale at a profit. It was acquiring these shares because Calvert desired to sever his relations with petitioner and the remaining stockholders desired that this be done.

If upon acquiring these 12½ shares from Calvert petitioner had canceled and retired them, instead of holding them in its treasury, then there seems but little question that the subsequent issue of the same number of shares to stockholder Swift at their then book value would have been a capital transaction and not taxable under the Treasury regulation quoted above; and we do not think that the fact that it was not done in that way, but in the manner recited in the stipulation of facts, changes the nature of the transaction in so far as the question we have here to decide is concerned and converts it into a transaction where petitioner "deals in its own shares as it might in the shares of another corporation."

In the *Dr. Pepper Bottling Co.* case, *supra*, in speaking of the issuance to the stockholders in a capital transaction of the same 50 shares which had been acquired from a retiring stockholder two years before that time and had since been held by the taxpayer as treasury stock, we said: "That the same stock which had previously been pur-

chased and held in the treasury was used, is entirely without significance. If the original shares had been canceled, and the authorized capital reduced, that process could have been reversed and new stock authorized and sold. The result at the beginning and end would have been the same." We so hold in the instant case.

Of course, if respondent's primary contention in the instant case, namely, that petitioner's issuance on May 31, 1939, to E. E. Swift of the same 12½ shares of stock which had been acquired from Calvert on January 23, 1939, was not for the purpose of acquiring additional capital for use in its business, but for the purpose of making a profit on a resale of the stock is correct, then our holding should be for the Commissioner and not for the petitioner. But the facts which have been stipulated are sufficient to show, we think, that the issuance of the stock to Swift was for the purpose of raising additional capital. The facts show that after the 12½ shares of stock were acquired from Calvert, the business of petitioner increased and it was in need of additional capital. It borrowed in excess of $30,000 from Swift and gave him its notes. The dates of these borrowings are not shown in the record, but obviously they were between January 23 and May 31, 1939.

It is stipulated that on the latter date:

* * * the twelve and one-half (12½) shares of its capital stock then held in petitioner's treasury, which had been obtained from Calvert, were issued to E. E. Swift by petitioner and the notes held by E. E. Swift credited with the sum of $6,600.00, an amount equal to one-sixth (⅙) of the net assets of petitioner corporation after the issuance of the said stock and the entry of the credit on the Swift indebtedness.

These facts, we think, taken together with the other facts which were stipulated and have been recited herein, are sufficient to show that the primary purpose of petitioner in issuing the stock to Swift was to raise additional capital for use in its business. We, therefore, hold that the gain which the Commissioner has determined is not taxable under the provisions of section 19.22 (a)–16 of Regulations 103.

The Commissioner in his brief relies upon *Allen* v. *National Manufacture & Stores Corporation*, 125 Fed. (2d) 239; *Trinity Corporation*, 44 B. T. A. 1219; affd., 127 Fed. (2d) 604; *Brown Shoe Co.* v. *Commissioner*, 133 Fed. (2d) 582, affirming 45 B. T. A. 212; and *Pittsburgh Laundry, Inc.*, 47 B. T. A. 230. These are the same cases which the Commissioner relied upon in *Dr. Pepper Bottling Co. of Mississippi, supra*, and which we distinguished on their facts in that case. For the same reasons that we thought those cases were distinguishable in that case, we think they are also distinguishable in the instant case.

*Decision will be entered under Rule 50.*