THE M. CONLEY COMPANY, PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 5833. Promulgated February 25, 1946.

Albert B. Arbaugh, Esq., for the petitioner.
William F. Robinson, Esq., for the respondent.

OPINION.

LEECH, *Judge* : Petitioner sold shares of its own capital stock in the taxable year for a sum which exceeded its cost by the sum of $6,981.50. Respondent taxed that amount as income of petitioner. The propriety of that action is the only issue submitted. It is agreed that Regulations 103, section 19.22(a)–16,[2] is valid and controlling. The answer to the question, therefore, turns on whether petitioner, in thus dealing in its own capital stock, was doing so "as it might in the shares of another corporation," or, on the other hand, was effecting a capital adjustment.

The record discloses that petitioner had about 1,000 shares outstanding, all of which had been issued under a restrictive covenant designed to limit the ownership of its stock to those actively engaged in the business of the corporation. The petitioner was not thereby obligated to purchase any of its capital stock. Nevertheless, on at least three occasions, petitioner had acquired an aggregate of 284 (over one-fourth) of its shares by purchase when stockholders having a prior right to do so declined to avail themselves of the privilege. Petitioner in acquiring the stock did not pay its then book value, as the stock certificate provided, but negotiated the price.' This stock was not canceled, but was carried as treasury stock. The clear if not the only inference is that it was bought and held for later sale or distribution to its officers and employees. On two separate occasions petitioner actually sold some of these purchased shares—at negotiated prices. The later sale occurred in 1941. What was the real nature of the transaction? In selling this stock thus acquired, did petitioner deal in it as it would in the stock of another corporation, or did the transaction constitute a capital adjustment under the regulation?

The testimony is that the sale of 20 shares in 1937 occurred merely because petitioner needed or wanted its proceeds. The testimony as to the purpose of the sale in 1941 is of similar import—to provide funds for the purchase of corporate supplies. But the record also reveals that petitioner's financial condition then was not only good, but relatively liquid. It also appears that even if any actual need for

---

[2] SEC. 19.22(a)–16. *Acquisition or disposition by a corporation of its own capital stock.*— Whether the acquisition or disposition by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction, which is to be ascertained from all its facts and circumstances. The receipt by a corporation of the subscription price of shares of its capital stock upon their original issuance gives rise to neither taxable gain nor deductible loss, whether the subscription or issue price be in excess of, or less than, the par or stated value of such stock.

But if a corporation deals in its own shares as it might in the shares of another corporation, the resulting gain or loss is to be computed in the same manner as though the *corporation were dealing in the shares of another.* So also if the corporation receives its own stock as consideration upon the sale of property by it, or in satisfaction of indebtedness to it, the gain or loss resulting is to be computed in the same manner as though the payment had been made in any other property. Any gain derived from such transaction is subject to tax, and any loss sustained is allowable as a deduction where permitted by the provisions of the Internal Revenue Code.

funds did exist, that need was occasioned by the use of its cash in paying the cash bonus of that year. It will be noted that a stock bonus was not paid. The payment of the cash bonus was absolute and unconditional. Two days thereafter, according to the testimony of the secretary of the petitioner, in a transaction wholly unconnected with and separate from the bonus payment, some, but not all, of the bonus recipients bought 103 shares of the treasury stock—not at book value, but at negotiated prices. The respective amounts of stock so bought bore no relation to the bonus payments received. M. Conley, president of petitioner, received $5,400 of the cash bonus and later bought 44 shares of treasury stock for $8,800; L. J. Meier, secretary of petitioner, received $2,700 of the cash bonus and bought 2 shares of the treasury stock for $400; and J. F. Miller, who received $50 of the cash bonus, bought none at all. That the field of buyers was intended to be and even was limited to those engaged in the business of the corporation, is not controlling. *Commissioner* v. *Air Reduction Co.*, 130 Fed. (2d) 145; *Helvering* v. *Edison Bros. Stores, Inc.*, 133 Fed. (2d) 575; certiorari denied, 319 U. S. 752; *Brown Shoe Co.* v. *Commissioner*, 133 Fed. (2d) 582; *United States* v. *Stern Bros. & Co.*, 136 Fed. (2d) 488. As the Eighth Circuit Court of Appeals said in *Helvering* v. *Edison Bros. Stores, Inc.*, *supra*, in affirming 45 B. T. A. 472, on this point on facts substantially the same as those presented here:

* * * The argument of the taxpayer is that the sale of its own stock to its employees, under a plan adopted by the corporation for the purpose of creating and sustaining employee interest in the affairs of the corporation, is not dealing in its own stock by the corporation, as it might deal in the shares of another corporation. The point is made that the purchase and sale of the shares in another corporation could not satisfy the essential purpose of the employee purchase plan. This, of course, is true but immaterial. The material fact is that the corporation bought and sold its own stock at a profit, dealing, in controlling aspects of the transaction, as it might have dealt with the stock of another corporation. The fact that these profitable sales were made to employees is not alone determinative of the character of the transaction viewed as a whole. We think the transaction clearly within the department's regulations.

Petitioner acquired more than 25 percent of its outstanding stock to sell or distribute to its officers or employees. It did not distribute but actually sold it, as it was bought, at negotiated prices. The price at which the 103 shares were sold in 1941 exceeded the cost of those shares by $6,981.50. Contrary to our holding in the situation existing in *Dr. Pepper Bottling Co. of Mississippi*, 1 T. C. 80; petition for review dismissed Sept. 21, 1943; *Brockman Oil Well Cementing Co.*, 2 T. C. 168; and *Cluett, Peabody & Co.*, 3 T. C. 169, upon which petitioner relies, the real nature of the transaction here was not an adjustment of capital. Rather petitioner, in fact, realized a profit. We think the record amply supports our ultimate finding of fact that in selling these 103 shares of its capital stock in the taxable year the

petitioner "dealt in its own shares as it might in the shares of another corporation." The gain realized on such sale is taxable as income to the petitioner.[3]

Reviewed by the Court.

*Decision will be entered for the respondent.*

---

MURDOCK, *J.*, concurring: There is a suggestion in this case that the corporation had a plan under which it used its own stock for the purpose of creating and sustaining employee interest in its affairs. However, there is no evidence to show that either the purchase or sale of the stock here in question was made pursuant to that plan. There is, on the contrary, a finding that the sale in 1941 was not made for that purpose, but was made merely for the purpose of providing some additional funds for corporate uses which could have been provided just as well by the sale of other securities. These circumstances distinguish this case from *Cluett, Peabody & Co.*, 3 T. C. 169.

---

OPPER, *J.*, concurring: It is difficult to see how this proceeding can be decided in favor of respondent without expressly overruling *Cluett, Peabody & Co.*, 3 T. C. 169. Here, as there, the stock was bought "for later sale or distribution to its officers and employees"; there, as here, it was subsequently sold because the corporation wanted to raise funds by the sale of its capital stock. Yet there we arrived at a conclusion favorable to the taxpayer and here we find for the respondent. Since, however, I am of the opinion that the *Cluett, Peabody* case was wrongly decided, I agree with the present result.

---

[3] *Allen* v. *National Manufacture & Stores Corporation*, 125 Fed. (2d) 239 ; certiorari denied, 316 U. S. 679 ; *Commissioner* v. *Air Reduction Co., supra ; Helvering* v. *Edison Bros. Stores, Inc., supra ; Brown Shoe Co.* v. *Commissioner, supra ; United States* v. *Stern Bros. & Co., supra ; Dow Chemical Co.* v. *Kavanagh*, 139 Fed. (2d) 42 ; *Edwin L. Wiegand Co.* v. *United States*, 60 Fed. Supp. 464.