ROLLINS BURDICK HUNTER CO., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 11691. Promulgated August 6, 1947.

*Raymond H. Schultz, Esq.*, for the petitioner.
*Jackson L. Boughner, Esq.*, for the respondent.

OPINION.

MURDOCK, *Judge*: The Commissioner determined deficiencies in income tax of $157.14 and $2,532.01 for 1942 and 1943, and a deficiency of $1,908.32 in excess profits tax for 1943. The only issue for decision is whether the petitioner was dealing in its own stock as it might in the stock of another and, therefore, realized taxable gains from sales of its own stock in each taxable year. The facts have been stipulated.

The petitioner is an Illinois corporation. It filed its returns for 1942 and 1943 with the collector of internal revenue for the first district of Illinois.

It is engaged in business as an insurance broker, obtaining all kinds of insurance for its clients, and it is dependent primarily upon the personal efforts, endeavors, and abilities of the principal individuals carrying on its business. Its stock, consisting of 1,000 shares of no par common, has always been allocated among and held by those individuals according to the capacity of each to contribute personal services to the business as determined by the judgment of the group. Each stockholder has also been an officer. Changes in stockholdings were made to take new individuals into the group, to take up the stock of deceased or retiring members of the group, and to reallocate the shares on the basis of the relative capacities of the shareholders to contribute personal services to the business. The petitioner, at all times, reserved the right to reacquire its stock upon the death or retirement of a stockholder and in any case where there was occasion

to dispose of the stock. All certificates, endorsed, have been held by the petitioner to carry out the plan indicated above. The petitioner has purchased and sold its stock only pursuant to that plan.

The stock was transferred at a fixed price of $50 per share until February 25, 1939. That was not its book value. This was changed on February 25, 1939, so that thereafter book value was to be paid for the stock.

The petitioner was holding 228 ·shares of its stock in its treasury in November 1942. That stock had been acquired at $50 per share when a prominent stockholder died in 1936.

The stockholders determined in November 1942 that 5 employees had developed into key or principal employees who were producing business and they should be taken into the group of owners as stockholders. Fifty-three shares were sold to those persons on December 30, 1942, and 42 shares were sold to them early in 1943. The price was $300 per share, which was approximately the book value of the shares at the time the agreement was reached. The new stockholders were elected officers on November 30, 1942.

There have never been more than 10 stockholders at any time. There have been 17 stockholders in all.

The purchase of the 228 shares of stock of the petitioner in 1936 and the subsequent sale of 95 shares thereof in 1942 and 1943 were effectuated in order to insure that no stock of the petitioner would come into the possession of individuals not in the employ of the petitioner and not having proper capacity to contribute to the business of the petitioner.

The Commissioner, in the deficiency notice, included in income for the year 1942 the sum of $13,250 representing the difference between the cost of 53 shares of treasury stock at $50 a share, or $2,650, and the selling price of said 53 shares at $300 per share, or $15,900.

The Commissioner, in the deficiency notice, included in income for the year 1943 the sum of $10,500 representing the difference between the cost of 42 shares of treasury stock at $50 a share, or $2,100, and the selling price of said 42 shares at $300 per share, or $12,600.

The Commissioner has provided in section 29.22 (a)–15 of Regulations 111 that "if a corporation deals in its own shares as it might in the shares of another corporation, the resulting gain or loss" is recognized for tax purposes. He concedes that the gain should not be recognized if this petitioner was not dealing in its own shares as it might in the shares of another corporation.

The stipulated facts amply demonstrate that the petitioner was not dealing in its own shares as it might in the shares of another corporation. The price at which the petitioner should acquire any shares was fixed in advance by agreement. The petitioner had no profit motive in buying or selling, but was merely arranging that its shares should

be held, and held only, by those who were its officers and principally responsible, through their personal services, for its success and should be held by them in proportion to their relative abilities to contribute personal services of value to the petitioner. Those purposes could not be accomplished by dealing in any other stock. The petitioner did not buy stock and sell it to create employee interest. It bought, as was required by agreement, so that the stock would never get into outside hands, but would be used only to indicate ownership in the business by those principally responsible for its success. The purchases and sales readjusted the capital for this purpose only. The transaction, viewed as a whole, was not one giving rise to taxable gain under section 22 (a) and the regulations. Cf. *Dr. Pepper Bottling Co. of Mississippi*, 1 T. C. 80; *Brockman Oil Well Cementing Co.*, 2 T. C. 168; *Cluett, Peabody & Co.*, 3 T. C. 169.

*Decision will be entered under Rule 50.*