BATTEN, BARTON, DURSTINE & OSBORN, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 8970. Promulgated September 25, 1947.

*Eugene T. McQuade, Esq.*, for the petitioner.
*Scott A. Dahlquist, Esq.*, for the respondent.

OPINION.

BLACK, *Judge*: The issue presented in this proceeding is whether petitioner realized taxable income upon sales in 1939 and 1941 of shares of its own stock.

The parties are in agreement that the applicable regulation is section 19.22 (a)–16 of Regulations 103.[1]

Respondent contends that all of the gain from the sale of petitioner's treasury stock is taxable. He argues that, in view of the extensive activity in petitioner's stock, petitioner was dealing in its own shares "as it might in the shares of another corporation."

Petitioner does not question the correctness of respondent's determination of the amount of the gain in each of the taxable years, if under the applicable statute and regulations it is taxable thereon. It contends, however, that it did not in either of the taxable years deal in its own capital stock "as it might in the shares of another corpora-

---

[1] SEC. 19.22 (a)–16. *Acquisition or disposition by a corporation of its own capital stock.*— Whether the acquisition or disposition by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction, which is to be ascertained from all its facts and circumstances. The receipt by a corporation of the subscription price of shares of its capital stock upon their original issuance gives rise to neither taxable gain nor deductible loss, whether the subscription or issue price be in excess of, or less than, the par or stated value of such stock.

But if a corporation deals in its own shares as it might in the shares of another corporation, the resulting gain or loss is to be computed in the same manner as though the corporation were dealing in the shares of another. So also if the corporation receives its own stock as consideration upon the sale of property by it, or in satisfaction of indebtedness to it, the gain or loss resulting is to be computed in the same manner as though the payment had been made in any other property. Any gain derived from such transactions is subject to tax, and any loss sustained is allowable as a deduction where permitted by the provisions of the Internal Revenue Code.

tion" and the transactions did not give rise to taxable gain under section 22 (a) of the Internal Revenue Code and the regulation. Petitioner also contends, in the alternative, that, if we should sustain the Commissioner's determination, our so doing should be limited to the shares of stock which petitioner had acquired by purchase and should not apply to the shares of stock which had been donated to petitioner by its stockholders following immediately upon its organization in 1928; that the sale of these latter shares was certainly, in any event, a transaction to raise needed capital and was not taxable.

We first take up petitioner's main contention. The answer to the question involved therein turns upon whether petitioner in thus dealing in its own capital stock was doing so "as it might in the shares of another corporation." The evidence shows that petitioner was engaged in the advertising agency business and its staff consisted largely of skilled creative writers, artists, and radio directors, upon whose work the success of the business depended. Upon its organization in 1928 it issued its entire capital stock of 50,000 shares to its officers and employees and simultaneously each stockholder donated to the petitioner's treasury 20 per cent of the shares initially issued to him, or a total of 10,000 shares. The purpose of this transfer was to have shares of stock available for issuance to other employees who had displayed talent and ability and to secure their loyalty and to retain them in the firm.

Since its organization, petitioner's stock has been restricted to its employees and has been allotted and sold on the basis of the employees' ability and capacity to contribute to the success of petitioner's business. Petitioner acquired stock from time to time from various stockholders who had resigned or were discharged, or their estates in case of death, in liquidation of their interests in accordance with the stockholders' agreement of March 3, 1933. Petitioner on occasion acquired stock from some of its stockholders if they urgently desired to sell. All purchases were made at book value and there was no negotiation as to price. The evidence is to the effect that profit was neither behind the purpose in acquiring these shares nor behind the purpose in distributing them to its officers and employees. Petitioner did not at any time carry treasury stock as an asset on its books or on its balance sheet. The fact that the same stock which had been previously donated or purchased and held in the treasury was used to sell to the employees is not determinative of the question of whether petitioner dealt in its own shares "as it might in the shares of another corporation."

In *Brockman Oil Well Cementing Co.*, 2 T. C. 168, in speaking of the issuance to a stockholder in a capital transaction of the same 12½ shares which had been acquired from a retiring stockholder several

months prior thereto and had been held by the taxpayer as treasury stock, we said:

> If upon acquiring these 12½ shares from Calvert petitioner had canceled and retired them, instead of holding them in its treasury, then there seems but little question that the subsequent issue of the same number of shares to stockholder Swift at their then book value would have been a capital transaction and not taxable under the Treasury regulation quoted above; and we do not think that the fact that it was not done in that way, but in the manner recited in the stipulation of facts, changes the nature of the transaction in so far as the question we have here to decide is concerned and converts it into a transaction where petitioner "deals in its own shares as it might in the shares of another corporation."

We so hold in the instant case.

In *Rollins Burdick Hunter Co.*, 9 T. C. 169, we find many similarities to the instant proceeding. In that case the taxpayer was engaged in business as an insurance broker and was dependent primarily upon the personal efforts, endeavors, and abilities of the principal individuals to carry on its business. Its stock, consisting of 1,000 shares of no par common, had always been allocated among and held by those individuals according to the capacity of each to contribute personal services to the business, as determined by the judgment of the group. Changes in stockholdings were made to take new individuals into the group, to take up the stock of deceased or retiring members of the group, and to reallocate the shares on the basis of the relative capacities of the shareholders to contribute personal services to the business. The taxpayer also reserved the right to reacquire its stock upon the death or retirement of a stockholder and in any case where there was occasion to dispose of the stock. The taxpayer purchased and sold its stock only pursuant to that plan. In that case we said:

> * * * The petitioner had no profit motive in buying or selling, but was merely arranging that its shares should be held, and held only, by those who were its officers and principally responsible, through their personal services, for its success and should be held by them in proportion to their relative abilities to contribute personal services of value to the petitioner. Those purposes could not be accomplished by dealing in any other stock. The petitioner did not buy stock and sell it to create employee interest. It bought, as was required by agreement, so that the stock would never get into outside hands but would be used only to indicate ownership in the business by those principally responsible for its success. The purchases and sales readjusted the capital for this purpose only. * * *

We sum up our reasons for thinking that petitioner was not dealing in its own shares "as it might in the shares of another corporation" as follows:

All sales were made on terms that permitted the employee to turn back his shares which were not paid for and were held by petitioner as collateral, at his purchase price at any time within seven years.

No business corporation would deal in the shares of another corporation in that manner as a general method doing business. In our opinion no business corporation dealing in shares of another corporation would invaribly commit itself to repurchase, at book value, the holdings of each and every purchaser upon the death, resignation or retirement of that purchaser. Yet that is what the taxpayer did in the case at bar. This followed from the fact that all outstanding shares are held subject to the stockholders' agreement. It is stipulated that during the taxable years in question "all purchases and sales were made at book value"; there was no negotiation as to price. The taxpayer did not carry its treasury stock on its books as an asset. The taxpayer did not attempt to choose a time favorable to it for the purchase or sale of shares. For these and other reasons, we do not think petitioner was dealing in its own shares of stock "as it might in the shares of another corporation." We decide this issue in petitioner's favor on authority of *Brockman Oil Well Cementing Co., supra; Dr. Pepper Bottling Co. of Miss.,* 1 T. C. 80; *Cluett, Peabody & Co.,* 3 T. C. 169; and *Rollins Burdick Hunter Co., supra.*

The respondent, in his brief, relies principally upon *Helvering v. Edison Bros. Stores, Inc.,* 133 Fed. (2d) 575; *Brown Shoe Co. v. Commissioner,* 133 Fed (2d) 582; *Commissioner v. Air Reduction Co.,* 130 Fed. (2d) 145; and *M. Conley Co.,* 6 T. C. 250. We think these cases are clearly distinguishable on their facts from the facts of the instant case and are not controlling.

Having decided the main issue in petitioner's favor, it becomes unnecessary to decide its alternative contention.

*Decision will be entered under Rule 50.*