## H. W. Porter & Co., Inc., and Subsidiary, Petitioner, *v.* Commissioner of Internal Revenue, Respondent.

Docket No. 17773.    Promulgated February 28, 1950.

*George E. H. Goodner*, *Esq.*, and *Scott P. Crampton*, *Esq.*, for the petitioner.

*John T. Rogers*, *Esq.*, for the respondent.

OPINION.

JOHNSON, *Judge*: Petitioner assigns error in the determination that it realized a taxable gain of $11,800 upon the sale in 1943 of 236 shares of its own stock held in treasury. While readjustments in capital structure are not taxable, it is now settled that, if a corporation deals in its own shares "as it might in the shares of another corporation," the resulting gain is subject to tax, sec. 29.22 (a)–15, Regulations 111; *Commissioner* v. *Woods Mach. Co.*, 57 Fed. (2d) 635; certiorari denied, 287 U. S. 613; *Dow Chemical Co.* v. *Kavanagh* (C. C. A., 6th Cir.), 139 Fed. (2d) 42; *Allen* v. *National Manufacture & Stores Corporation*, 125 Fed. (2d) 239.

In applying the principle this Court has deemed such dealings, when not carried out for the purpose of a prospective profit, but to satisfy a contractual obligation, equalize shareholdings, *Dr. Pepper Bottling Co. of Mississippi*, 1 T. C. 80, eliminate a participant wishing to retire, *Brockman Oil Well Cementing Co.*, 2 T. C. 168, or implement a profit-sharing plan for employees, *Cluett, Peabody & Co.*, 3 T. C. 169, as not dealings which the corporation might carry out in the shares of another corporation, and has held the resulting profit on disposition nontaxable. On facts substantially similar to those here established, we applied the same reasoning and reached the same conclusion in *Rollins Burdick Hunter Co.*, 9 T. C. 169, and in *Batten, Barton, Durstine & Osborn, Inc.*, 9 T. C. 448. The former decision was reversed by the Court of Appeals for the Seventh Circuit, 174 Fed. (2d) 698, and the latter by the Second Circuit, 171 Fed. (2d) 474. We are not unmindful of these reversals of our holdings, but we note that in each case the opinion of the Court of Appeals was by a divided court. Moreover, after a careful consideration of the facts and the question here involved, a question which we have a number of times considered over a period of years, we are respectfully constrained to follow our holdings in these and the other cases mentioned above for the reasons therein stated. We have reached the conclusion that petitioner here was not dealing in its own shares "as it might in the shares of another corporation," and we accordingly reverse respondent's determination of a taxable gain of $11,800 on petitioner's disposition of the 236 shares in 1943.

Petitioner assigned error as to invested capital and excess profits tax credit, but the errors alleged as to them were predicated solely upon the Commissioner's treatment of the $11,800 as taxable gain, and disposition will be made under Rule 50.

Petitioner also complains of the Commissioner's disallowance of $7,079.72 of its deduction for bad debts. Porter and Hayden each maintained a reserve for bad debts. In 1943 Porter increased its reserves from $4,196 to $5,910; Hayden, from $8,256 to $13,526. The $7,079.72 disallowed represents the consolidated increases. In defense of his disallowance respondent argues that the amount of the reserves without any increase was more than ample to cover the companies' bad debts in the light of their past experience. He stresses that large collections had been made on debts which had been charged to the reserves, and for the years 1937–1943 he makes a computation of the aggregate charges and subsequent collections. These figures do indicate that the reserves had been adequate in past years, and it is also true that during 1943 charges against the reserves were negligible—much less than in any preceding year.

But 1943 was a very abnormal year. While the corporate accounts receivable aggregated less than $112,000 in 1939, when the two reserves were together $6,013, they aggregated nearly $650,000 in 1943, and more than $154,000 of these accounts was over 30 days past due at the end of the year. It is not reasonable to suppose, as respondent would have us do, that the multiple increase in petitioner's volume of business during the war years would be unaccompanied by an increase in the amount of bad debts. *Southeastern Finance Co.*, 4 T. C. 1069; affirmed on another point, 153 Fed. (2d) 205. And, under the circumstances prevailing during that period, past experience with less business volume loses its normal value as an index to the reasonableness of an addition to reserves. For, as we said in *Black Motor Co.*, 41 B. T. A. 300; affirmed on another point (C. C. A., 6th Cir.), 125 Fed. (2d) 977:

* * * A method or formula that produces a reasonable addition to a bad debt reserve in one year, or a series of years, may be entirely out of tune with the circumstances of the year involved. * * *

As increased, the two reserves were only $19,436, or 3 per cent of accounts receivable. They were only 12½ per cent of the accounts 30 days or more past due at the end of the year. Petitioner's claim is well within the bounds of reason, and we find that the additions to the reserves were proper. The Commissioner's disallowance of their deduction is reversed.

Reviewed by the Court.

*Decision will be entered under Rule 50.*

HILL, DISNEY, and OPPER, *JJ.*, dissent.