The Landers Corporation v. Commissioner.
Landers Corp. v. Commissioner
Docket No. 31189.
United States Tax Court
1952 Tax Ct. Memo LEXIS 188; 11 T.C.M. (CCH) 577; T.C.M. (RIA) 52172; June 9, 1952
*188 G. Charles Scharfy, Esq., for the petitioner. James A. Scott, Esq., for the respondent. MURDOCK Memorandum Findings of Fact and Opinion The Commissioner determined a deficiency in income tax of $3,415.98 for 1946. The only issue is whether the petitioner realized any gain from the sale of 674 shares of its own stock which it had previously acquired from former stockholders. Findings of Fact The petitioner is an Ohio corporation. It filed its return for 1946 with the collector of internal revenue for the Tenth District of Ohio. The petitioner was engaged in the business of coating, combining and finishing cotton and jute fabrics. Its authorized capital stock consisted of 10,000 no-par common shares each having a stated value of $50. The stock was closely held. It was not listed on any exchange and there was not a ready market for it. The situation in regard to the stock on January 1, 1946, was as follows: Unissued
1,572
Repurchased
571
In hands of stockholders
7,857
Total
10,000
The petitioner had purchased the 571 shares during the years 1932 to 1946 upon request to accommodate the sellers as follows: No. of
No. of
Sellers
sellers
shares
Cost
Union employees
44
85
$ 4,825.55
Other employees
8
138
9,528.36
Relatives of employees
7
144
9,077.96
Heirs and estates of de-
ceased employees
3
200
11,008.00
Friends of employees
2
4
230.00
Totals
64
571
$34,669.87
*189 Forty-four employees requested the petitioner to buy their stock when they joined a union. The petitioner upon request and to accommodate the sellers purchased its own shares in 1946 as follows: No. of
Seller
Date
shares
Cost
Relative of employee
April 5
3
$ 240
Estate of deceased em-
ployee
July 8
100
8,500
Total
103
$8,740 The petitioner never thereafter acquired any of its own shares. It did not intend to resell its shares when it purchased them. The petitioner in order to comply with its Code of Regulations that a director be a stockholder sold 10 shares of its stock to a new director on February 20, 1946 for $800. The petitioner decided in 1946 to expand its operations and to replace worn out equipment. The officers determined to sell stock of the petitioner to provide as much as possible of the capital needed. They sold the 664 repurchased shares on July 23 and, shortly thereafter, 121 previously unissued shares at $85 per share. All of the shares were sold to persons who were already shareholders, or who were employees or friends or relatives of employees. The petitioner was not able to raise sufficient funds through the sales *190 and had to borrow $200,000 from banks to carry out its plan. The petitioner never acquired any of its own shares as an investment or to make a profit. It bought and sold its shares directly, never through brokers. It never carried its purchased shares on its books as an asset but cancelled them and treated them as retired shares. It recorded purchased shares at their stated value rather than at their cost. It never paid dividends on such shares. "22. When shares were purchased by Petitioner at a price above the stated value of $50.00 per share, the stated value was debited to an account entitled 'Common Stock - Treasury', and the excess was debited to surplus; when shares were purchased at a price below the stated value per share, the difference was credited to surplus. In the year 1946, the surplus account so debited and credited was the capital surplus account; for the years 1939 to 1945, inclusive, to earned surplus; for prior years, to both capital and earned surplus. "23. When previously purchased shares were sold by Petitioner at a price above the stated value of $50.00 per share, the stated value was credited to an account entitled 'Common Stock - Treasury', the excess *191 was credited to surplus; when such shares were sold at a price below the stated value per share, the difference was debited to surplus. The surplus accounts so debited and credited were as indicated in Stipulation No. 22." The petitioner, in acquiring and later selling its own shares, was not dealing in those shares as it would in the shares of another corporation. The stipulation of facts is incorporated herein by this reference. Opinion MURDOCK, Judge: The record clearly shows that the petitioner never purchased its own shares except as an accommodation upon solicitation of the seller, never purchased them as an investment, never purchased them for the purpose of realizing a profit, cancelled them, treated them as retired, did not intend to resell them when it acquired them, and only resold them for reasons which developed later. The sale of 10 shares to a new director accomplished a purpose which could not have been accomplished by the sale of shares of another corporation. The sale of the remaining shares was to raise additional capital for expansion and refitting. The petitioner did not deal in its own shares as it might have dealt in the shares of another corporation. *192 The petitioner realized no taxable gain from the sales of its own shares in 1946. Dr. Pepper Bottling Co. of Miss., 1 T.C. 80; Brockman Oil Well Cementing Co., 2 T.C. 168; Cluett, Peabody & Co., Inc., 3 T.C. 169. Decision will be entered under Rule 50.