**COMMISSIONER OF INTERNAL
REVENUE**

v.

**LANDERS CORP.**

No. 11804.

United States Court of Appeals,
Sixth Circuit.

Feb. 11, 1954.

Harry Marselli, Washington, D. C.
(H. Brian Holland, Asst. Atty. Gen., Ellis
N. Slack, Lee A. Jackson, Washington,
D. C., on the brief), for petitioner.

G. Charles Scharfy, Toledo, Ohio, for
respondent.

Before SIMONS, Chief Judge, and AL-
LEN and MILLER, Circuit Judges.

MILLER, Circuit Judge.

The Commissioner of Internal Revenue
seeks a review of the ruling of the Tax
Court which set aside a deficiency in-
come tax assessment of $3,415.98 for
the year 1946. The Tax Court held that
the respondent taxpayer, The Landers
Corporation, did not realize any taxable
gain from the sale by it of 674 shares

of its own stock which it had previously acquired from former stockholders.

The facts, for the most part stipulated, are as follows: The respondent, an Ohio corporation, was engaged in the business of coating and finishing cotton and jute fabrics. Its authorized capital stock consisted of 10,000 no-par common shares of a stated value of $50 per share. The stock was closely held and was not listed on any stock exchange or dealt in on any market.

From 1932 through 1946, the respondent had purchased 674 shares of its own capital stock from its employees, relatives and friends of employees or from the heirs and estates of deceased employees, for the purpose of accommodating the sellers. It did not intend to resell the shares when it purchased them and did not thereafter acquire any more of its own shares. It purchased the shares directly without using a broker, did not acquire them as an investment or to make a profit, and did not carry them on its books as an asset. The repurchased shares were marked cancelled across the face of the stock certificates, which were pasted to the stubs in the stock certificate book. Dividends were not paid thereafter on such shares.

In February 1946, the respondent sold ten shares of this stock to a new director for purposes of qualification at $80 per share. During the same year it decided to expand its operations and replace its capital equipment, and to finance the operation as far as possible through the sale of its own shares. During 1946, it sold the remaining 664 repurchased shares and 121 previously unissued shares, at $85 per share for a total of $66,725. These were sold to shareholders who were either employees or relatives and friends of employees of the respondent. The cost of the expansion and replacement program was approximately $356,000. The balance of this cost was financed out of operating funds and bank loans in the amount of $200,000.

When shares were purchased by respondent at a price above the stated value of $50 per share the stated value was debited to an account entitled "Common Stock-Treasury," and the excess was debited to surplus; when shares were purchased at a price below the stated value of $50 per share, the difference was credited to surplus. When previously purchased shares were sold at a price above the stated value of $50 per share, the stated value was credited to an account entitled "Common Stock-Treasury," the excess was credited to surplus; when such shares were sold at a price below the stated value per share, the difference was debited to surplus.

The Commissioner ruled that the respondent realized a gain of $13,830.13 upon the sale in 1946 of the 674 shares of its stock and made the deficiency assessment complained of. The Tax Court held that the respondent had not purchased the shares as an investment, did not intend to resell them, had cancelled them and treated them as retired, had resold them for reasons which developed later, and that in doing so, it realized no taxable gain from the sales in 1946 under the provisions of Treasury Regulations 111, § 29.22(a)-15.

Section 22(a), Internal Revenue Code, 26 U.S.C.A. defining gross income, does not specifically refer to the purchase and sale by a corporation of its own stock. The Treasury has attempted to cover the situation by Regulations. Prior to 1934, the Regulations provided that the proceeds from the original sale by a corporation of its shares of capital stock constituted the capital of the corporation, and that if a corporation purchased any of its stock and held it as treasury stock, the subsequent sale of such stock was considered a capital transaction, with the proceeds of the sale treated as capital and not as income. In 1932, the Court of Appeals for the First Circuit held in Commissioner of Internal Revenue v. S. A. Woods Mach. Co., 57 F.2d 635, that this was not the correct rule in all cases, in that whether such a transaction gave rise to a taxable gain or deductible loss depended upon the real nature of the transaction, i. e., if the shares were acquired or parted with in connection with

a readjustment of the capital structure of the corporation, the rule was applicable, but if the transaction was not of that character, a resulting gain or loss should be taken into account in computing the taxable income. See also Commissioner of Internal Revenue v. Boca Ceiga Development Co., 3 Cir., 66 F.2d 1004. Accordingly, in 1934 the Regulations were changed to give effect to this ruling. Dow Chemical Co. v. Kavanagh, 6 Cir., 139 F.2d 42; Commissioner of Internal Revenue v. Rollins Burdick Hunter Co., 7 Cir., 174 F.2d 698, 699–700. The Regulations applicable to the present case, Treasury Regulations 111, § 29.22(a)-15, referred to above, and relied upon by the Tax Court, provide that whether a taxable gain or deductible loss occurs is to be ascertained from all the facts and circumstances. It specifically provides—

"The receipt by a corporation of the subscription price of shares of its capital stock upon their original issuance gives rise to neither taxable gain nor deductible loss, whether the subscription or issue price be in excess of, or less than, the par or stated value of such stock.

"But if a corporation deals in its own shares *as it might in the shares of another corporation,* the resulting gain or loss is to be computed in the same manner as though the corporation were dealing in the shares of another. * * * Any gain derived from such transactions is subject to tax, and any loss sustained is allowable as a deduction where permitted by the provisions of the Internal Revenue Code." (Emphasis added.)

The Tax Court took the view that the respondent in acquiring and later selling its own shares, under the circumstances in this case, "did not deal in its own shares as it might have dealt in the shares of another corporation," and, accordingly, realized no taxable gain from the sales. In support of its ruling, it relied upon its previous decisions in Dr. Pepper Bottling Company of Mississippi, 1 T.C. 80; Brockman Oil Well Cementing Co., 2 T.C. 168; Cluett, Peabody & Co., Inc., 3 T.C. 169.

The Commissioner contends that these decisions no longer represent the correct view, pointing out that in three later cases decided by the Tax Court, in each of which these cases were relied upon and followed, the ruling of the Tax Court was reversed by the Court of Appeals. See Rollins Burdick Hunter Co., 9 T.C. 169, reversed, Commissioner of Internal Revenue v. Rollins Burdick Hunter Co., supra, 7 Cir., 174 F.2d 698; Batten, Barton, Durstine & Osborn, Inc., 9 T.C. 448, reversed, Commissioner of Internal Revenue v. Batten, Barton, Durstine & Osborn, Inc., 2 Cir., 171 F.2d 474; H. W. Porter & Co., 14 T.C. 307, reversed, Commissioner of Internal Revenue v. H. W. Porter & Co., 3 Cir., 187 F.2d 939. In the Porter case, the Tax Court referred to the two previous reversals, which however were in other circuits and stated that it felt constrained to follow its own holdings in those cases and in the other three cases where its decisions had not been reversed. But the Court of Appeals for the Third Circuit joined the Second and Seventh Circuits in taking the opposite view. In its opinion in the present case, the Tax Court made no reference to the three reversals, but apparently took a position similar to the one taken in the Porter case, and considering the question still an open one in this Circuit, adhered to its earlier ruling. Although the question has been heretofore considered by this Court in Dow Chemical Co. v. Kavanagh, supra, the material difference in the factual situation in that case prevents its ruling from being decisive of the present case. However, there are several other cases from other circuits which also support the Commissioner's contentions. Commissioner of Internal Revenue v. Air Reduction Co., 2 Cir., 130 F.2d 145; Aviation Capital v. Pedrick, 2 Cir., 148 F.2d 165, 160 A.L.R. 1080; Allen v. National Manufacture & Stores Corp., 5 Cir., 125 F.2d 239; Helvering v. Edison Bros. Stores, 8 Cir., 133 F.2d 575; Brown Shoe Co. v. Commissioner, 8 Cir., 133 F.2d 582; United States v.

Stern Bros. and Co., 8 Cir., 136 F.2d 488; Edwin L. Wiegand Co. v. United States, 60 F.Supp. 464, 104 Ct.Cl. 111.

■ As shown by the Tax Court decisions above referred to, the Tax Court has construed the Regulations as meaning that when a corporation purchases its own shares, not as an investment or for the purpose of resale at a profit, but for some other corporate purpose, such as for sale to its officers or employees under an incentive or profit-sharing plan, or for adjusting the respective holdings of different officers or directors, and later the stock is sold either to carry out that purpose or to further some other corporate purpose, such as to provide necessary capital for an expansion or replacement program, in which the element of profit on the resale is incidental, the corporation has not dealt in its own shares as it might in the shares of another corporation, and the resulting gain is not taxable. The cases which take the opposite view have construed the Regulations as meaning that regardless of the original purpose of the corporation in purchasing its shares, if the corporation does not actually cancel and retire the shares so purchased but later sells them, regardless to whom they are sold, the corporation has sold an asset in the same way as when it sells the shares of another corporation which it might own, and that any resulting gain is the same type of taxable income as would result from a profit derived from the sale of any other asset. We are of the opinion that this latter view is the correct one, in addition to being the view held at the present time by what seems to be the great weight of authority.

■ Section 22(a), Internal Revenue Code, includes as taxable income "Gains, profits, and income derived from * * sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; * * * also * * * gains or profits and income derived from any source whatever." The purchase and resale at a profit of the stock in question would seem clearly to fall within that definition. As stated by the Court in Commissioner of Internal Revenue v. H. W. Porter & Co., supra [187 F.2d 941], the difference between the purchase price and the selling price "certainly looks like gain to a man in the street, whatever accountants might say about it." On the other hand, if the purchased stock is cancelled and legally retired so as to constitute an adjustment of capital, and new stock is later issued and sold, it is clearly a capital transaction and not income. We are of the opinion that that is the distinction which the Regulation actually makes, and that any other construction of it attempts to illegally exempt from the operation of the statute what is obviously and as a practical matter gain, profit or income. We can not give to the Regulations a construction which will violate the language of the statute. Commissioner of Internal Revenue v. Netcher, 7 Cir., 143 F.2d 484, 487, certiorari denied, 323 U.S. 759, 65 S. Ct. 92, 89 L.Ed. 607; Busey v. Deshler Hotel Co., 6 Cir., 130 F.2d 187, 190, 142 A.L.R. 563. The Regulations can not exempt from the operation of the statute what is actually included by its terms. Manhattan General Equipment Co. v. Commissioner, 297 U.S. 129, 56 S.Ct. 397, 80 L.Ed. 528.

We must keep in mind that the wording of the present regulations followed the decision in Commissioner of Internal Revenue v. S. A. Woods Mach. Co., supra, and closely follows some of the language of the opinion in that case. That opinion, in drawing the distinction between a capital transaction involving a readjustment of the capital structure of the corporation, in which there is no taxable gain, and a transaction "not of that character," [57 F.2d 636,] where a taxable gain or loss is recognized, referred first to such a capital transaction, and then continued,—"But where the transaction is not of that character, and a corporation has legally dealt in its own stock as it might in the shares of another corporation, and in so doing has made a gain or suffered a loss, we perceive no suffi-

cient reason why the gain or loss should not be taken into account in computing the taxable income." In referring to a corporation dealing in its own stock as it might in the shares of another corporation the Court was talking about transactions which were not capital transactions.

■■■ The respondent seeks to avoid this result by urging upon us that as a practical matter the purchased stock was cancelled and retired, so as to make the resale of it the same as the issuance and sale of new stock, and since its bookkeeping and accounting treatment of the transaction had the same result as if the stock had been legally retired, it should be given that legal effect in the present controversy. However, it is well settled that in transactions which are in good faith and of a bona fide character the imposition of an income tax depends upon what the taxpayer actually did, rather than upon what he might have done. United States v. Phellis, 257 U.S. 156, 173, 42 S.Ct. 63, 66 L.Ed. 180; Commissioner of Internal Revenue v. Rollins Burdick Hunter Co., supra, 174 F.2d at page 701. In this case, it seems clear that the stock was not legally cancelled and retired. It was still available for resale without regard to preemptive rights of shareholders. The capital structure of the corporation was not modified or changed as permitted under the provisions of the Ohio statute. The "cancellation" of the paper certificates did not cancel the stock. It is the usual practice for old certificates to be surrendered by a purchaser to the corporation and such old certificates are either marked cancelled or treated as cancelled thereafter by the corporation who recognizes the purchaser as the new stockholder. The new purchaser becomes the stockholder in substitution for the selling stockholder. The issuance of a new certificate is not necessary to create the status of stockholder, the certificate being merely the evidence of the relationship. In re Penfield Distilling Co., 6 Cir., 131 F.2d 694, 698; In re Chubby's Parkchester, D.C.S.D.N.Y., 94 F.Supp. 701, 704. The

manner in which the transaction was handled on the taxpayer's books is not controlling. Helvering v. Midland Ins. Co., 300 U.S. 216, 57 S.Ct. 423, 81 L.Ed. 612; Bazley v. Commissioner, 331 U.S. 737, 67 S.Ct. 1489, 91 L.Ed. 1782; Estate of Lashells v. Commissioner, 6 Cir., 208 F.2d 430.

The judgment of the Tax Court is reversed and the case remanded for further proceedings consistent with the views expressed herein.