# UNITED STATES *v.* ANDERSON, CLAYTON & CO.

No. 26.   Argued October 20, 1955.—Decided November 7, 1955.

*Assistant Attorney General Holland* argued the cause for the United States.   With him on the brief were *Solicitor General Sobeloff, John F. Davis, Ellis N. Slack, Lee A. Jackson* and *Harry Baum.*

*John C. White* argued the cause and filed a brief for respondent.

MR. JUSTICE MINTON delivered the opinion of the Court.

Anderson, Clayton & Co., a Delaware corporation, was organized in 1929.   Its capital structure consisted of preferred stock and 100,000 shares of common stock, the

capital value of which was fixed at one dollar per share. By April 21, 1930, all of the common stock had been issued, in varying amounts, to the corporation's managing officials, in consideration of their worth and responsibility to the company, which is engaged in the highly technical and skilled business of cotton merchandising.

In 1931 a written agreement was entered into between the corporation and the common stockholders, the purpose of which was to restrict the ownership of the common stock to the management group and to adjust the respective interests in the common stock among that group as responsibility changed. Accordingly, the agreement provided that the stock could not be disposed of except by written consent of the owners of 75% of the common stock. Upon the death of any party to the agreement, the corporation agreed to purchase the common stock of the deceased at its book value as of July 31 preceding the stockholder's death.

One M. D. Anderson, one of the chief officers of the company, was originally issued 31,000 shares. During the development of the corporation, Mr. Anderson had transferred shares of his stock, pursuant to the agreement, to junior officials as they assumed more duties and responsibilities, until at the time of his death in 1939 he owned 18,574 shares. These shares the corporation purchased at their book value of $50.79 per share. This stock was not retired, but was retained as treasury stock. While in the treasury, it could not be voted nor were dividends paid on it.

The company in 1944 sold 6,500 of these shares to junior officials at the then book value of $112.68 per share. The difference between the price paid Anderson's estate and that received from the sale of the shares to the junior officials was $402,285, on which the United States imposed a long-term capital-gains tax of $100,571.25. Respondent paid the tax and sued in the

Court of Claims to recover the amount. The respondent took the position that no long-term capital gain resulted because it was not dealing in its stock "as it might in the shares of another corporation," as contemplated in Treasury Regulations 111, § 29.22 (a)–15.[1]  The Court of Claims agreed with respondent and entered judgment for recovery of the tax paid, with interest.  129 Ct. Cl. 295, 122 F. Supp. 837.  We granted certiorari, 348 U. S. 936, because of the claim of conflict with decisions of the Courts of Appeals.[2]

The sole question therefore is whether, in the circumstances of this case, Treasury Regulations 111, § 29.22 (a)–15 makes the sale of this treasury stock of the corpora-

---

[1] "SEC. 29.22 (a)–15. *Acquisition or Disposition by a Corporation of its Own Capital Stock.* (a) Whether the acquisition or disposition by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction, which is to be ascertained from all its facts and circumstances. The receipt by a corporation of the subscription price of shares of its capital stock upon their original issuance gives rise to neither taxable gain nor deductible loss, whether the subscription or issue price be in excess of, or less than, the par or stated value of such stock.

"(b) But if a corporation deals in its own shares as it might in the shares of another corporation, the resulting gain or loss is to be computed in the same manner as though the corporation were dealing in the shares of another.  So also if the corporation receives its own stocks as consideration upon the sale of property by it, or in satisfaction of indebtedness to it, the gain or loss resulting is to be computed in the same manner as though the payment had been made in any other property.  Any gain derived from such transactions is subject to tax, and any loss sustained is allowable as a deduction where permitted by the provisions of the Internal Revenue Code."

[2] *Commissioner* v. *Landers Corp.*, 210 F. 2d 188; *Commissioner* v. *H. W. Porter & Co.*, 187 F. 2d 939; *Commissioner* v. *Rollins Burdick Hunter Co.*, 174 F. 2d 698; *Commissioner* v. *Batten, Barton, Durstine & Osborn, Inc.*, 171 F. 2d 474.

tion a taxable transaction under § 22 (a) of the Internal Revenue Code of 1939.[3]

Article 66 of Treasury Regulations 74, promulgated under the Revenue Act of 1928, provided that a corporation which purchases its own stock, holds it as treasury stock, and later sells it "realizes no gain or loss" from such transactions. This Court upheld that regulation as a proper one interpretive of the general terms of § 22 (a) of the Internal Revenue Code. *Helvering* v. *Reynolds Co.*, 306 U. S. 110, 114. The present regulation was promulgated in 1934. Its effect was to remove the categorical exclusion of taxable gains or losses arising out of the purchase and sale by a corporation of its own stock accorded such transactions by Article 66 of Treasury Regulations 74. The amended regulation specifically excludes from tax consequences a corporation's sale of its stock upon original issue whether sold for more or less than par or stated value. On the other hand, the regulation specifically provides that tax consequences flow from the receipt by the

---

[3] "SEC. 22. Gross Income.

"(a) *General Definition.* 'Gross income' includes gains, profits, and income derived from salaries, wages, or compensation for personal service (including personal service as an officer or employee of a State, or any political subdivision thereof, or any agency or instrumentality of any one or more of the foregoing), of whatever kind and in whatever form paid, or from professions, vocations, trades, businesses, commerce, or sales, or dealings in property, whether real or personal, growing out of the ownership or use of or interest in such property; also from interest, rent, dividends, securities, or the transaction of any business carried on for gain or profit, or gains or profits and income derived from any source whatever. . . ."
For tax years after 1953, transactions such as the one here involved carry no tax consequences by virtue of congressional enactment of § 1032 of the Internal Revenue Code of 1954, which provides: "No gain or loss shall be recognized to a corporation on the receipt of money or other property in exchange for stock (including treasury stock) of such corporation."

corporation of its own stock as consideration for sales of its property or in satisfaction of indebtedness to it. With regard to all other dealings by a corporation in its own stock, whether or not tax consequences result depends generally upon the "real nature of the transaction, which is to be ascertained from all its facts and circumstances." The regulation provides further that "if a corporation deals in its own shares as it might in the shares of another corporation," such dealings are considered, for tax purposes, as though the corporation were in fact dealing in the other corporation's stock. Thus, whether the transaction here in question is taxable depends, in the final analysis, on whether respondent corporation dealt with its shares of treasury stock "as it might" have dealt with another corporation's stock.

The Court of Claims ruled, after a thorough examination of all of the facts and circumstances surrounding the transaction, that the corporation was not dealing in its shares as it might in the shares of another corporation. This conclusion is abundantly supported by the subsidiary findings, which are all supported by the evidence in this case.

We agree with the Court of Claims. Here the purchase and sale were made pursuant to a contract entered into without any shown purpose of advantageous investment. Instead the purpose of the agreement was found to be to maintain the distribution of the stock among responsible and active members of the organization in a manner designed to reflect their worth to the corporation. Indicative of this singleness of purpose is the fact that some of the stock purchased from Mr. Anderson's estate was sold to the corporation's other executives at a price below that for which it was acquired. No consideration was given to the opportune time for purchase or sale. The purchase of Mr. Anderson's stock by the corporation was dictated by the terms of the contract upon the fortuitous

circumstance of his death. Moreover, when purchased, the stock was lodged in the treasury. It could not be taken into account in any payment of dividends, nor voted in shareholder meetings, nor counted for the purpose of establishing a quorum. These unrecognized rights are all incident to the ownership of common stock of other corporations. It is thus clear that respondent was not dealing in its shares as it might in the shares of others.

The Government urges that the crucial inquiry as to whether the transaction is taxable under the regulation depends for its answer upon whether the reacquired shares are resold or retired and new shares issued; since the shares were not retired, the resale at a price greater than cost results in a taxable gain under § 22 (a) of the Code and the applicable regulation. The Government receives comfort for its position in the language of *Commissioner* v. *Batten, Barton, Durstine & Osborn, Inc.*, 171 F. 2d 474, 476, and *Commissioner* v. *Landers Corp.*, 210 F. 2d 188, 191. But we do not think formalities should be raised to such an important position. Moreover, the applicable regulation provides that tax consequences depend upon "the real nature of the transaction, which is to be ascertained from all its facts and circumstances," and not upon the sole circumstance that the stock is not retired. When viewed in its entirety, the instant transaction, limited to a wholly intracorporate purpose with no element of speculation or gain envisioned from dealing in its shares, does not constitute dealing by the corporation in its own shares as it might deal in the shares of another corporation within the meaning of the regulation.

The judgment is

*Affirmed.*

Mr. Justice Douglas and Mr. Justice Burton dissent.