Whitaker, Judge,
delivered the opinion of the court:
This is a suit for the recovery of income taxes paid for the calendar years 1949 through 1953.
Plaintiff included in its income tax returns for the years involved the capital gains derived from the disposition of certain shares of its common stock which plaintiff had acquired, in part, in a liquidation of its wholly-owned subsidiary, in part as dividends in kind, and in part by purchase, and which, after acquisition, it had held in its treasury. Thereafter, plaintiff, having concluded this was erroneous, filed claims for refund for those years, on the ground that the dispositions of its stock did not give rise to taxable gains. The Commissioner of Internal Revenue disallowed the claims for refund and this suit followed.
Plaintiff is a New York corporation engaged primarily in the business of manufacturing and selling electrical appliances and equipment. During the years pertinent to this litigation, plaintiff had a capitalization of 35,000,000 shares of voting common stock of no par value, approximately 29,000,000 of which were issued and outstanding. Its common stock was listed and actively traded on the New York Stock Exchange, ranging in price from a low in 1942 of $21.50 a share to a high in 1953 of $92.25 a share.
Plaintiff also had authorized, but unissued, 1,207,036 shares of $10 par value 6 percent cumulative special stock. *619 Only plaintiff’s common stock is involved in this action.
In 1948, 475,800 shares of plaintiff’s common stock were owned by G. E. Employees Securities Corporation, a wholly owned subsidiary of plaintiff, organized and operated for the purpose of providing a medium for the investment of the savings of plaintiff’s employees. By that time, in 1948, economic conditions had so changed that Employees Securities could no longer function as a medium of investment for employee savings and, hence, a plan for the complete liquidation of this corporation was adopted. Pursuant to the plan of liquidation, the stock in Employees Securities held by plaintiff was transferred to Employees Securities and was cancelled, and the 475,800 shares of plaintiff’s common stock, together with other assets held by Employees Securities, were distributed to plaintiff.
At the time of the liquidation plaintiff was not required to report any gain on the difference between the cost to it of the Employees Securities stock and the fair market value of the property received in the liquidation. However, the basis for the gain derived by plaintiff from the disposition of the assets received from Employees Securities was the same in its hands as it was in the hands of Employees Securities. Internal Kevenue Code of 1939, § 113(a) (15), 26 U.S.C. § 118(a) (15). Plaintiff so reported it in its income tax returns.
Some time prior to 1949, plaintiff had adopted a plan of paying additional compensation to its executives and other supervisory personnel, known as the “Extra Compensation Plan”, under which the directors were empowered to pay to such employees an amount not in excess of 8 percent of the balance of the earnings for each year after deducting 8 percent on plaintiff’s average investment. The plan was administered by a committee appointed by the board of directors from among its own members. Certain selected managerial employees were to receive one-half the amount allotted to them in cash, and the other half in plaintiff’s common stock. As to the remainder, the committee was given absolute discretion to determine whether the employees concerned were to be paid wholly in cash or partly in cash and partly in plaintiff’s common stock or in other securities. *620 As it turned out, substantially all awards made under the plan during the period 1936 through 1953 were paid approximately one-half in cash and one-half in plaintiff’s common stock.
In addition to the distributions of shares of its common stock under the Extra Compensation Plan during the years 1936 through 1953 plaintiff made further distributions of shares of its common stock to certain of its sales managers and other employees who had performed outstanding services but who did not participate in the Extra Compensation Plan.
Each of plaintiff’s employees receiving shares of stock as additional compensation was informed by letter that “the stock is your property and may be retained or disposed of according to your own judgment.”
In 1948, after the liquidation of Employees Securities, plaintiff established the G. E. Employees Savings and Stock Bonus Plan to afford its employees a convenient means of investing their savings in U.S. Savings Bonds, Series E. Under this plan each participating employee authorized regular payroll deductions for the purchase of savings bonds. The bonds so purchased were deposited with plaintiff and, after a specified holding period, they were delivered to the employee or employees concerned together with an amount of plaintiff’s common stock equal to 15 percent of the cost of the savings bonds purchased by the employees. The plan was administered by a trust set up by plaintiff in 1949. The trust received and held the bonds and shares of plaintiff’s common stock, collected and invested the dividends received on the stock, and then at the appointed time delivered the shares and the income accumulated thereon to the person or persons entitled thereto.
Besides the foregoing distributions of plaintiff’s common stock to its own employees,, plaintiff sold, at the market price, during the years 1949 through 1953, approximately 42,000 shares of its common stock held in its treasury to certain affiliated corporations for use by those corporations under their own extra compensation and stock bonus plans.
The dispositions of treasury stock to plaintiff’s employees and to its affiliates for distribution to their employees during the taxable years involved is summarized in the following table:

*621

During 1949, 1952 and. 1953, plaintiff distributed 54,000 shares of its treasury stock to charitable institutions in addition to the other uses it made of the stock.
The only other distributions of plaintiff’s treasury stock with which we are concerned occurred in 1953. These were small in amount and are as follows: 508 shares were paid to employees who had filed patent applications covering inventions made by them; 200 shares were paid to selected employees as honorariums for outstanding services; 950 shares were transferred in trust for children of employees who were born on October 15, 1953, plaintiff’s 75th anniversary; 7,747 shares were used to acquire certain minority shares of stock outstanding of Canadian General Electric Company, Limited, a corporation of which plaintiff owned 96 percent of the outstanding shares.
All total, plaintiff disposed of more than 560,000 shares of its common stock held in its treasury during the period January 1, 1949, through December 31, 1953, in the manner described.
On January 1, 1949, the first of the taxable years in issue, plaintiff held in its treasury, 497,778.36 shares of its common stock. Of these, 475,800 were the shares received in the 1948 liquidation of Employees Securities Corporation. In addition to these shares, plaintiff had received as dividends in kind on its Employees Securities stock, 12,278 shares of its own stock. The remaining 9,700.36 shares plaintiff had purchased on the open market.
Subsequent thereto, and from January 1, 1949, to December 31, 1953, plaintiff purchased on the open market some 332,000+ additional shares of its common stock, acquired a small number of additional shares from the stock bonus trust *622 and received approximately 6,000 shares in the merger or liquidation of affiliated corporations. (See Finding 43 for a detailed schedule of plaintiff’s stock acquisitions.)
None of the stock which plaintiff acquired was retired but was held by plaintiff as treasury stock and was carried on plaintiff’s books as a charge to an asset account entitled “G.E. common stock reacquired.” In the report to its stockholders and in its income tax returns it was carried as an asset under the heading of “investments”. This typical comment about it was made in a note on the balance sheet accompanying the report to the stockholders:
Note 9. General Electric common stock in the portfolio was held for corporate purposes and was carried at its cost. There were 159,335 shares held on December 31, 1952, the aggregate quoted market value of which was $11,591,595.
All distributions of plaintiff’s common stock in question were made from this account. While held by plaintiff as treasury stock, none of it had voting rights and no dividends were paid on it.
For each of the years 1949 through 1953, plaintiff paid a tax on the difference between the cost or basis of the common stock held in its treasury and disposed of in such year and the fair market value of the shares at the time of disposition. Plaintiff says it is entitled to a refund of these taxes because it realized no taxable gains on their disposition.
Whether a corporation realizes income or gain on the sale or other disposition of treasury stock has been the subject of considerable litigation. Whether it does or not depends, in our opinion, on the facts of the particular case. Under the facts of this case, we think plaintiff did realize gains.
Section 22(a) of the Internal Eevenue Code of 1939, 26 U.S.C. § 22(a), required the inclusion in gross income of “gains or profits and income derived from any source whatsoever,” but this does not answer our question. Our question is, does a corporation which buys or otherwise acquires its own stock and then sells it or otherwise disposes of it realize gains, profits, or income from such a transaction?
Until 1934 the treasury regulations in effect under prior revenue laws provided that a corporation realized no gain *623 or loss from the purchase or sale of its own. stock. See e.g. Treasury Kegulation 77, Art. 66. But, as the result of the decision of the Court of Appeals for the First Circuit in Commissioner v. A. S. Woods Machine Co., 57 F. 2d 636, cert. denied, 287 U.S. 613, the regulations were amended on May 2, 1934. T.D. 4430 [XIII-1 C.B. 36]. These regulations, as amended, were continued in force as section 29.22(a)-15 of Treasury Kegulation 111, applicable for all years involved in this case through 1951, and, since then, as section 39.22(a)-15 of Kegulation 118, applicable to the years 1952 and 1953. Section 29.22(a)-15 of Kegulation 111 provides:
Sec. 29.22(a)-15. Acquisition or Disposition by a Corporation of its Own Capital Stock. — Whether the acquisition or disposition by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction, which is to be ascertained from all its facts and circumstances. The receipt by a corporation of the subscription price of shares of its capital stock upon their original issuance gives rise to neither taxable gain nor deductible loss, whether the subscription or issue price be in excess of, or less than, the par or stated value of such stock.
But if a corporation deals in its own shares as it might in the shares of another corporation, the resulting gain or loss is to be computed m the same manner as though the corporation were deeding in the shares of another. So also if the corporation receives its own stock as consideration upon the sede of property by it, or in satisfaction of indebtedness to it, the gain or loss resulting is to be computed in the same manner as though the payment had been made in any other property. Any gain derived from such transactions is subject to tax, and any loss sustained is allowable as a deduction where permitted by the provisions of the Internal Revenue Code. [Emphasis supplied.]
These regulations remained in force and effect from their adoption in 1934 until the adoption of the Internal Revenue Code of 1954. As we have said, they had their genesis in the decision of the Court of Appeals for the First Circuit in Commissioner v. Woods Machine Co., supra. In that case the corporation received shares of its own stock in satisfaction of its claim for infringement of one of its patents. The Commissioner of Internal Revenue had assessed a tax on the *624 gain derived from the transaction. The Board of Tax Appeals — six members dissenting — had held that no gain had been realized, but the Court of Appeals reversed. It said:
Whether the acquisition or sale by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction involved. * * * If it was in fact a capital transaction, i.e., if the shares were acquired or parted with in connection with a readjustment of the capital structure of the corporation, the Board rule applies. * * * But where the transaction is not of that character, and a corporation has legally dealt in its own stock as it might in the shares of another corporation, and in so doing has made a gain or suffered a loss, we perceive no sufficient reason why the gain or loss should not be taken into account in computing the taxable income. The view taken by the Board of Tax Appeals * * * presses accounting theory too far in disregard of plain facts. * * *
Following this decision the regulations were changed to read as quoted, supra.
As changed, they have been held to be valid by the Courts of Appeals for the Second, Third, Sixth, Seventh and Eighth Circuits, by the Board of Tax Appeals, and by this court. See Commissioner of Internal Revenue v. Air Reduction Co., 130 F. 2d 145 (Second Circuit); Commissioner v. Batten, Barton, Durstine & Osborn, 171 F. 2d 474 (Second Circuit); Commissioner v. H. W. Porter & Co., 187 F. 2d 939 (Third Circuit; Commissioner v. Landers Corp., 210 F. 2d 188 (Sixth Circuit); Commissioner v. Rollins Burdick Hunter Co., 174 F. 2d 698 (Seventh Circuit); Helvering v. Edison Bros. Stores, 133 F. 2d 575 (Eighth Circuit); Brown Shoe Co. v. Commissioner, 45 B.T.A. 212, affirmed 133 F. 2d 582. This court sustained their validity in Wiegand v. United States, 104 Ct. Cl. 111.
They were impliedly upheld by the Supreme Court in United States v. Anderson, Clayton & Co., 350 U.S. 55. At pp. 58-59 the Court said:
* * * The amended regulation specifically excludes from tax consequences a corporation’s sale of its stock upon original issue whether sold for more or less than par or stated value. On the other hand, the regulation *625 specifically provides that tax consequences flow from the receipt by the corporation of its own stock as consideration for sales of its property or in satisfaction of indebtedness to it. With regard to all other dealings by a corporation in its own stock, whether or not tax consequences result depends generally upon the “real nature of the transaction, which is to be ascertained from all its facts and circumstances.” The regulation provides further that “if a corporation deals in its own shares as it might in the shares of another corporation,” such dealings are considered, for tax purposes, as though the corporation were in fact dealing in the other corporation’s stock. Thus, whether the transaction here in question is taxable depends, in the final analysis, on whether respondent corporation dealt with its shares of treasury stock “as it might” have dealt with another corporation’s stock.
The decision in that case assumed the validity of the regulations. It held for the taxpayer because it was of opinion that the transaction under scrutiny did not come within their terms.
Congress impliedly approved them in the Eevenue Act of 1936 and in the Eevenue Code of 1939, providing for the determination of the dividends paid credit to be taken in computing the surtax on undistributed profits, by differentiating between a stock dividend and a dividend payable in the stock of a corporation held for investment. Section 27 of the Internal Eevenue Code of 1939 reads, in part, as follows:
(d) Dividends in Kind. — If a dividend is paid in property other than money (including stock of the corporation if held by the corporation as an investment') the amount with respect thereto which shall be used in computing the basic surtax credit shall be the adjusted basis of the property in the hands of the corporation at the time of payment, or the fair market value of the property at the time of the payment, whichever is the lower. [Emphasis supplied.]
# $ * # H*
(f) Taxable Stock Dividends. — In case of a stock dividend or stock right which is a taxable dividend in the hands of shareholders under section 115(f), the amount with respect thereto which shall be used in computing the basic surtax credit shall be the fair market value of the stock or the stock right at the time of the payment.
*626 However, when Congress adopted the Internal Revenue Code of 1954, it decided to exclude from gross income any gain or loss in an exchange of treasury stock for money or other property; but there is no intimation that this provision was intended to be retroactive. (Internal Revenue Code of 1954, § 1032, 26 U.S.C. § 1032.) Prior to the Internal Revenue Code of 1954, the law was as stated in the regulations quoted, supra.
Our problem, then, is to determine whether plaintiff’s dealings in its own stock, as outlined above, come within the terms of the regulations.
Under some circumstances, it is true, that a corporation’s own stock held in its treasury is not an asset. Upon acquisition of it, absent an intention to use it as other property, the corporation’s equity capital is reduced by the amount of it. But, where a corporation acquires it for the purpose of holding it temporarily and later using it as it might use the stock of another corporation, or as it might use cash, it would seem that it is of the same character as any other stock the corporation might acquire. In such case, the corporation’s equity capital is not in fact reduced, because the treasury stock is earmarked for future disposition. It is somewhat in the same status as other outstanding stock while held in the treasury pending its disposition for a particular purpose, such as, e.g., for the purpose of discharging an obligation incurred or likely to be incurred.
This would seem to be the reason for the differentiation made by the regulations between an original issue of stock and a corporation’s stock in which it deals as it might in the shares of another corporation. When the corporation acquires such stock, it has no intention of reducing its capital; it holds it in its treasury only until the time arrives for its foreordained disposition.
The regulations describe three transactions in which gain or loss results when a corporation deals in its own stock: (1) where it deals in it as it might in the shares of another corporation; (2) where it sells property and receives stock as the consideration for it; and (3) where it receives its stock in satisfaction of a debt.
We are of opinion that plaintiff’s transactions come within both the first and second of the kinds of transactions men *627 tioned. As to tbe second kind, when plaintiff merged with or liquidated its subsidiaries it received its own stock in consideration of the transfer to its subsidiary of its stock holdings in the subsidiary. While the transaction does not come within the letter of this portion of the regulations, it does come within the principle of them. We think its merger with or liquidation of its subsidiaries should be treated as a sale of its stockholdings in the subsidiary for the subsidiaries’ assets, which included stock in plaintiff.
We are further of the opinion that plaintiff dealt in its own stock as it might have in the stock of any other corporation, that is to say, it was engaged in the enterprise of acquiring it for the purpose of using it in the discharge of its obligations, in lieu of the payment of them in cash or using other stock to discharge them. Let us see if this is so. First, how did plaintiff acquire the stock?
Of the shares in question, 475,800 were received by it on the liquidation of its subsidiary, Employees Securities. When this stock was received plaintiff set it up on its books as an asset. There was a reason for this, as we shall see. It could have retired it and reduced its capital by the amount of it, but this was not done. Instead, plaintiff carried it on its books as an asset.
53,200 shares were received as dividends in kind, declared by plaintiff’s subsidiaries who had held shares of plaintiff’s stock. The findings show these dividends were declared in kind, rather than in cash, because plaintiff had a use for them, and wanted them declared this way. They were set up on its books as an asset.
332,000+ shares were purchased on the open market. These also were set up on the books as an asset.
All of these shares were carried on plaintiff’s books as assets because plaintiff needed them for several purposes. It needed them for use in connection with its Extra Compensation Plan, described above. Some of its employees coming under this plan were to receive their extra compensation, one-half in cash, and one-half in plaintiff’s stock. The other employees might be paid either in cash or in stock as the committee might decide. It disposed of 227,641 shares in this manner.
*628 It needed these shares for use in connection with its Extra Incentive Compensation Plan. It disposed of 226,558 shares in this manner. It used 4,169 shares to pay commissions.
It sold to certain of its affiliates 41,755.59 shares, which they used in connection with their incentive compensation plans.
It gave away 54,000 shares as charitable contributions.
The sales to its affiliates were at the market price, whatever the price at which plaintiff had acquired them. The donations to charity were deducted from income at the market price, whatever the price plaintiff had paid for them. The extra compensation paid its employees were deducted from income at the market price of the stock, irrespective of what plaintiff had paid for them. The 475,800 shares acquired from Employees Securities in 1948 had cost that company $6,636,557.50. When they were disposed of by plaintiff, their market value was between $15,000,000 and $20,000,000.
Plaintiff realized a gain on its acquisitions and dispositions of its stock in the sum of $11,265,008.84. Huge a company as plaintiff was, it can hardly be supposed that profits on the transactions were of no consideration.
Plaintiff wants to be relieved of paying a tax on the gain in spite of the fact that it deducted their increased market value from income as an expense.
In plaintiff’s hands these shares were the equivalent of cash. The allotments under the Extra Compensation Plan were payable either in cash or stock. If no stock, all cash. The stock was given in lieu of cash. In the hands of the recipients, it was equivalent to cash, since it could be sold at any time.
Had not the stock been given as charitable contributions, it would have been necessary to pay them in cash.
It used its stock as an added incentive to get its employees to save their money and buy United States Savings Bonds.
It seems to us the plaintiff used its stock as the equivalent of cash, or as it might have used the stock of any other corporation.
We are of opinion that plaintiff dealt in its stock as it might have in the stock of another corporation, with this
*629 sole exception, that only its own stock could serve a part of its purpose, to wit, of giving its employees an interest in the company, if they chose to retain the stock, instead of converting it into cash. Stock in any other corporation, however, would have served the other part of its purpose equally well, that is, to give its employees a dollar value of extra compensation. Also, the stock of any other corporation would have served equally well for making a charitable contribution, and perhaps as well for use by its subsidiaries to whom it sold its stock.
Plaintiff used its stock in lieu of cash. Such a use is within the meaning of the regulations. Whether it be in lieu of cash or in lieu of stock in another corporation, matters not.
But plaintiff says we held to the contrary in Hercules Powder Co. v. United States, 149 Ct. Cl. 77. The facts in that case and in this one are closely alike, but every case must be decided on its own facts. The majority in the Hercules Powder Company case thought the facts of that case did not bring it within the regulations. Chief Judge Jones and Justice Reed disagreed. They thought the facts brought the case within the regulations and, being of the opinion the regulations were valid, the case was governed by them. As we set out above, the Courts of Appeals and the Supreme Court have also upheld the validity of the regulations. We also had upheld them in the case cited, and we reaffirm that holding. The facts of the instant case, we believe, bring it within the regulations. If they do, the gains derived are subject to tax.
It is obvious that the facts of this case differ quite a good deal from those in Anderson, Clayton <& Company v. United States, supra. The decision in that case is not controlling in a case such as we now have before us.
Plaintiff’s petition will be dismissed.
It is so ordered.
Reed, Justice {Ret.) sitting by designation; Dueeee, Judge; and Jones, Chief Judge, concur.