OPINION The question in the instant case is whether petitioner suffered a deductible loss on the sale of its treasury stock in 1953, and consequently is entitled to a capital loss carryover to the taxable year in issue. Section 1032(a) of the Internal Revenue Code of 1954 specifically prohibits any recognition of gain or loss on sales or exchanges of a corporation’s own stock.[3] However, the instant case arises under the Internal Revenue Code of 1939 and is specifically governed by section 39.22(a)-15, Regs. 118, which reads as follows: Sec. 39.22(a)-15 Acquisition or disposition tty a corporation of its own capital stock, (a) Whether the acquisition or disposition by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction, which is to he ascertained from all its facts and circumstances. The receipt by a corporation of the subscription price of shares of its capital stock upon their original issuance gives rise to neither taxable gain nor deductible loss, whether the subscription or issue price be in excess of, or less than, the par or stated value of such stock. (b) However, if a corporation deals in its own shares as it might in the shares of another corporation, the resulting gain or loss is to be computed in the same manner as though the corporation were dealing in the shares of another. So also if the corporation receives its own stock as consideration upon the sale of property by it, or in satisfaction of indebtedness to it, the gain or loss resulting is to be computed in the same manner as though the payment had been made in any other property. Any gain derived from such transactions is subject to tax, and any loss sustained is allowable as a deduction where permitted by the provisions of the Internal Revenue Code. The above regulation has been considered in numerous oases and its validity is no longer questioned. See United States v. Anderson, Clayton & Co., 350 U.S. 55 (1955); Dr. Pepper Bottling Co. of Miss., 1 T.C. 80 (1942); Hercules Powder Co. v. United States, 180 F. Supp. 363 (Ct. Cl. 1960); General Eleetric Co. v. United States, 299 F. 2d 942 (Ct. Cl. 1962); Girard Trust Corn Exchange Bank v. United States, 191 F. Supp. 551 (E.D. Pa. 1961). We agree with the Court of Claims that the rationale behind the above regulation is tenuous at best and that the distinction between a corporation’s dealing in its own shares as it might in the shares of another corporation and other types of dealings is not one readily recognized. See Hercules Powder Co. v. United States, supra. We also agree with that court’s following characterization of the approach to be taken in applying the statute (180 F. Supp. at 366): The problem in a particular case would seem to be, then, how much does the activity of the corporation look like the activity of an outside investor and speculator in its stock. A slight resemblance would seem to be insufficient to justify the distinction. In Dr. Pepper Bottling Co. of Miss., supra, we held that the non-taxaible antithesis to a corporation’s dealing in its shares as it might in the shares of another corporation occurred if the transaction was “a capital transaction,” i.e., if the shares were acquired or parted with in connection with a readjustment of the capital structure of the corporation. We then stated the following three propositions (1 T.C. at 84) : We view these decisions as establishing the propositions, first, that whether a corporation’s dealings in its own stock result in tax consequences to the corporation, depends upon the character and purpose of the purchase and of the sale and their relationship to each other; second, that if their true nature is a readjustment of capital, no taxable gain or loss occurs even though the result is more than a mere bookkeeping process and the outcome may in a real sense be a benefit or detriment to the corporation’s economic position; and, third, that one test of the true nature of the transaction is whether the corporation has dealt in its stock in the same way that it would in the stock of another corporation. This proceeds from a mere matter of construction and entirely without reference to any constitutional question of the power to tax such transactions in a different context of statutory interpretation. See Kosland v. Helvering, 298 U.S. 441; Helvering v. Gowran, 302 U.S. 238. In subsequent eases we applied the above propositions to determine the “real nature of a transaction” in opposition to some courts which had adopted the position that unless the corporation repurchasing its own stock retired that stock according to State law and issued new stock, the transaction resulted in a taxable gain or loss. Our position was subsequently adopted by the Court of Claims and affirmed by the Supreme Court, which stated (United States v. Anderson, Clayton & Co., supra (350 U.S. at 60)): The Government urges that the crucial inquiry as to whether the transaction is taxable under the regulation depends for its answer upon whether the required shares are resold or retired and new shares issued; since the shares were not retired, the resale at a price greater than cost results in a taxable gain under § 22(a) of the Code and the applicable regulation. The Government receives comfort for its position in the language of Commissioner v. Batten, Barton, Durstine & Oshorn, Inc., 171 F.2d 474, 476, and Commissioner v. Landers Corp., 210 F.2d 188, 191. But we do not think formalities should be raised to such an important position. Moreover, the applicable regulation provides that tax consequences depend upon “the real nature of the transaction, which is to be ascertained from all its facts and circumstances,” and not upon the sole circumstance that the stock is not retired. When viewed in its entirety, the instant transaction, limited to a wholly intracorporate purpose with no element of speculation or gain envisioned from dealing in its shares, does not constitute dealing by the corporation in its own shares as it might deal in the shares of another corporation within the meaning of the regulation. See Anderson, Clayton & Co. v. United States, 122 F. Supp. 837 (Ct Cl. 1954), affd. 350 U.S. 55 (1955). In the instant case we find and hold that petitioner’s activities constituted no more than an intracorporate readjustment oí its capital structure, resulting in no deductible loss. We first note that petitioner’s purchase of its shares arose out of an option granted in connection with its issuance of previously unissued stock, a transaction which section 39.22(a)-15(a), Regs. 118, specifies as nontaxable, as it has a direct affect on a corporation’s equity capital. See General Eleetrie Co. v. United States, supra at 947. In addition, the shares were restricted by the agreement under which they were issued to prevent either party from making a speculative profit, and the stock certificates themselves contained a legend restricting their salability. As we pointed out in Timken-Detroit Axle Co., 21 T.C. 769 (1954), stock issued under similar restrictions indicates that the predominant purpose behind the stock’s issuance was nonspeculative. We also note that after the stock was reacquired, there is no indication that it was being held as a speculative investment. As soon as petitioner repurchased the shares it immediately offered them to the public at the prevailing market price for the stated purpose of raising additional capital, not to make a profit on the sale. See Girard Trust Corn Exchange Bank v. United States, supra. In fact on brief, petitioner admits that the stock was immediately resold to avoid “the vagaries of future market action.” Even if petitioner 'had held the stock for a period of time the result would probably have been the same, for it is settled that when treasury stock is issued to the public for the primary purpose of raising additional capital, the sale is still indicative of an intracorporate capital adjustment. Brockman, Oil Well Cementing Co., 2 T.C. 168, 173 (1943); Clwett, Peabody & Co., 3 T.C. 169, 176 (1944). Petitioner points out that it could have engaged in similar transactions with the stock of another corporation, and further points out that no one factor is controlling in determining the “real nature of the transaction.” See Penn-Texas Corporation v. United States, 308 F.2d 575, 578 (Ct. Cl. 1962). However, petitioner’s activities here in no way resembled those of an investor and speculator in its own shares. Petitioner’s speculation was in the stock (and business) of Sosnik and Sosnik, Inc. It used its own shares simply as a medium of exchange in connection with that speculation. Consequently, we have found and hold that under section 39.22 (a)-15, Regs. 118, petitioner did not “deal in its shares as it might in the shares of another corporation.” As the court pointed out in Girard Trust Corn Exchange Bank v. United States, supra at 556: The distinction between extracorporate and intracorporate purpose is not clear. However, it would be fair to say that a transaction of an extracorporate nature is one that cannot be directly traced to the internal affairs of the corporation. Bather, it is something that the corporation does that any individual might himself do to realize a material gain outside of his own business or profession. It is readily discernible here that plaintiff acquired these shares [in the instant case, gave the option] for a wholly intracorporate purpose, i.e., the merger. [In the instant ease, the acquisition of Sosnik and Sosnik, Inc.] Perhaps if plaintiff had held these shares for a longer period of time with the thought of realizing a gain, rather than disposing of them almost immediately, a different result would be reached. Petitioner alternatively contends that though in form it was acquiring and selling its own shares, in substance its transactions amounted to no more than a “Loss upon a Guaranty” of its stock’s value. We give short shrift to this argument, as there is no evidence in the record which indicates that either petitioner or the Sosniks ever intended that petitioner was to be a simple guarantor. As respondent points out, if petitioner were a guarantor, it would not have been able to demand its stock in return for cash paid out, as it did in the instant case. Also, if petitioner were only a guarantor, the Sosniks would have been required to find a purchaser for Thalhimer’s shares before petitioner was liable for any amount, and such was not the case here. Thus, we find and hold that in neither form nor substance did petitioner enter into, or suffer a loss arising out of, a guarantor’s relationship. To reflect the concessions of the parties, Decision will J>e entered v/nder Rule 50. SEC. 1032. EXCHANGE OF STOCK NOR PROPERTY. (a) Nonrecognition of Gain or Loss. — No gain or loss shall be recognized to a corporation on the receipt of money or other property In exchange for stock (including treasury stock) of such corporation.