LUCIUS PITKIN, INC., PETITIONER, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 17513. Promulgated October 11, 1949.

*Leonard Belford, Esq.*, for the petitioner.
*J. Richard Riggles, Esq.*, for the respondent.

OPINION.

DISNEY, *Judge*: The question to be determined is whether the petitioner sustained a loss from the distribution in kind of certain of its assets to one of its three stockholders in exchange for one-third of its outstanding common stock held by that stockholder. Petitioner's primary argument is based on the application of section 29.22 (a)–15 of Regulations 111.[1] The respondent argues primarily that there was a distribution in kind in partial liquidation under section 115 of the Internal Revenue Code, and that under Regulations 111, section 29.22 (a)–20,[2] no gain or loss was realized.

After study of the statute, the above regulations, and the cases cited by the parties, we have come to the conclusion that the transaction here involved constituted not a sale of assets, but a distribution in

---

[1] SEC. 29.22 (a)–15. ACQUISITION OR DISPOSITION BY A CORPORATION OF ITS OWN CAPITAL STOCK.—Whether the acquisition or disposition by a corporation of shares of its own capital stock gives rise to taxable gain or deductible loss depends upon the real nature of the transaction, which is to be ascertained from all its facts and circumstances. The receipt by a corporation of the subscription price of shares of its capital stock upon their original issuance gives rise to neither taxable gain nor deductible loss, whether the subscription or issue price be in excess of, or less than, the par or stated value of such stock.

But if a corporation deals in its own shares as it might in the shares of another corporation, the resulting gain or loss is to be computed in the same manner as though the corporation were dealing in the shares of another. So also if the corporation receives its own stock as consideration upon the sale of property by it, or in satisfaction of indebtedness to it, the gain or loss resulting is to be computed in the same manner as though the payment had been made in any other property. Any gain derived from such transactions is subject to tax, and any loss sustained is allowable as a deduction where permitted by the provisions of the Internal Revenue Code.

[2] SEC. 29.22 (a)–20. * * * No gain or loss is realized by a corporation from the mere distribution of its assets in kind in partial or complete liquidation, however they may have appreciated or depreciated in value since their acquisition.

kind in partial liquidation, with no loss resultant therefrom. Under either regulation we are to determine the real nature of the transaction involved. *Commissioner* v. *Woods Machine Co.*, 57 Fed. (2d) 635; *Spear & Co.* v. *Heiner*, 54 Fed. (2d) 134. We have done so. The Commissioner in the deficiency notice held the transaction to be "a mere distribution of its assets in kind, in partial a complete liquidation," from which, though the statement is typographically indefinite, it is apparent that the intention was to hold that there was distribution of assets in kind in either partial or complete liquidation. The petitioner has the burden of showing, prima facie, to the contrary. In our view, it has not done so. The arrangement among the stockholders had for years provided for the elimination of a stockholder who wished to withdraw. This was accomplished. The language of the agreement is not that of a contract of purchase and sale, as was the case in *C. M. Menzies, Inc.*, 34 B. T. A. 163, involving this point. It provides that petitioner "will give for" the shares of Sam Tour certain equipment and material and that he "agrees to surrender" his shares. Neither the word "purchase" nor the word "sell" appears. It is true that the corporate minutes of the same date stated that Tour was "desirous of selling his one-third interest"; also that he presented a proposition to "accept as payment for his stock" the equipment and material but, in our opinion, this recitation is not sufficient to overcome the effect of the agreement. It not only provided for the surrender of the stock, and that Sam Tour receive the equipment and materials, but provided the settlement of a great many other details between the parties—and it will be noted that insurance was not included in the "equipment and materials of the value of $5,000" which petitioner would give for the shares of stock, though the petitioner on brief includes the cash surrender value of an insurance policy. The insurance policy was merely one of numerous other matters settled by the agreement, others being, for example, that petitioner would turn over to Tour certain patents and that Tour would pay petitioner 25 per cent of future profits therefrom, while the petitioner agreed to continue with a certain royalty agreement and to pay Tour 25 per cent of the royalties received. Again it was agreed that the petitioner should assign a certain agreement regarding "the soro process" to E. I. Valyi; also that petitioner would pay off a loan on the life insurance of Sam Tour and pay two notes due him; also that no business was to be solicited by Tour on petitioner's property and none by petitioner on the property to be taken over by Tour. All this is obviously not a mere agreement of purchase and sale.

The object plainly was to eliminate Tour and his stock from the organization, leaving it as it was originally, as is indicated by the seemingly unnecessary care in both canceling the stock and declaring a

dividend thereof to the two remaining stockholders. The cancellation of the stock complies with the definition of partial liquidation in section 115 (i) of the Internal Revenue Code, for therein we find that partial liquidation means distribution in complete cancellation of a part of the stock. Tour's stock was not only surrendered, but canceled. The dividend declared therein, later, was a gesture without real effect, since without it the two remaining stockholders owned the same interest in the corporate assets as with it. On all the facts, we conclude and hold that there was partial liquidation of the Tour stock, not sale. Under Regulations 111, section 29.22 (a)–20, no loss was realized. However, if we consider Regulations 111, section 29.22 (a)–15, relied on by the petitioner, the result is not different. Under the facts before us, we do not think the corporation dealt in its own shares as it might in the shares of another corporation; and we have already concluded that it did not receive the shares as consideration for sale of property by it.

Nor was this an operation which could as well have been accomplished by the dealing in stock of another corporation. Clearly, the purchase of other corporate stock would not have eliminated Tour's interest in the petitioner; neither would it have eliminated the friction that gave rise to the transaction. We are convinced that the petitioner herein did not deal in its stock in the same way as it would have in the stock of another corporation.

See *Brockman Oil Well Cementing Co.*, 2 T. C. 168, which was decided on facts similar to the ones in the instant case, except that the question there turned on the resale of the stock acquired in exchange for its (the corporation's) own assets, rather than, as in the instant case, whether the distribution of the corporation's assets for its own stock caused a taxable transaction. The following language from the *Brockman Oil Well* case is just as applicable in the instant case as it was in that case:

In the instant case the facts are stipulated and, of course, we must decide the case upon these facts. From the stipulated facts it seems entirely clear that when on January 23, 1939, petitioner acquired from one of its stockholders, J. V. Calvert, 12½ shares of its authorized and issued capital stock by paying over to him a ratable portion of the corporation's net assets, which represented approximately one-sixth of the then net worth of petitioner, it was not acquiring the shares as it would acquire the shares of another corporation for a subsequent resale at a profit. It was acquiring these shares because Calvert desired to sever his relations with petitioner and the remaining stockholders desired that this be done.

See also *Hill* v. *Commissioner*, 126 Fed. (2d) 570, where, as here, the stock of a certain stockholder was canceled, and though the corporate resolution authorized "purchase," it was held that there was complete cancellation, therefore, partial liquidation; also *Oscar G.*

554

*Joseph*, 32 B. T. A. 1192, where partial liquidation, as against purchase and sale, was found in the matter of transfer of corporate property to stockholders in proportion to holdings.

We distinguish the cases cited by petitioner. To substantiate its position as to the applicability of section 29.22 (a)–15, petitioner cites *Commissioner* v. *Air Reduction Co.*, 130 Fed. (2d) 145; certiorari denied, 317 U. S. 681, and *Aviation Capital, Inc.* v. *Pedrick*, 148 Fed. (2d) 165; certiorari denied, 326 U. S. 723. We agree that they are authority for the principle contained in the regulation, i. e., that when a corporation deals in its own shares of stock as it does in shares of stock of another corporation the transaction is subject to tax consequence, but in both cases the tax consequence arises because the shares of stock in question were resold by the corporation, and it was *that* transaction that gave rise to the applicability of the regulation in question. We are convinced that the real nature of the transaction here involved denies the realization of a taxable loss under section 29.22 (a)–15 of Regulations 111. The above conclusions render unnecessary the consideration of other arguments advanced by the respondent.

*Decision will be entered for the respondent.*