The **FARMERS UNION CORPORATION,**
Appellant,

v.

**COMMISSIONER OF INTERNAL REVENUE,** Appellee.

No. 17352.

United States Court of Appeals
Ninth Circuit.

March 8, 1962.

Rehearing Denied April 10, 1962.

Ralph A. Yeo, San Mateo, Cal., for petitioner.

Louis F. Oberdorfer, Asst. Atty. Gen., Lee A. Jackson, A. F. Prescott, Donald A. Kahn, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before HAMLIN, KOELSCH and DUNIWAY, Circuit Judges.

DUNIWAY, Circuit Judge.

In 1951, the Farmers Union Corporation operated a retail hardware business and also had substantial real estate holdings in San Jose, California. It desired to get out of the retail business, and transferred the inventory and related assets constituting that business to seven of its 134 shareholders, receiving in return 8000 of its 20,000 shares of stock. In its tax returns for 1951 it treated the transaction as a sale of inventory, claiming that it incurred a loss of $226,349.84, and reported a total loss of $246,952.11, $217,527.20 of which was attributed to this transaction. In its 1952 and 1953 returns, it used $16,544.54 and $26,982.-20, as net loss carry-over deductions, pursuant to § 122(b) (2) (B) of the Internal Revenue Code, 26 U.S.C.A. § 122(b) (2) (B). (All references are to the Internal Revenue Code of 1939, unless otherwise noted). It deducted as business expenses $450 in 1951 and $1,650.50 in 1952, paid for legal, escrow and accounting fees incurred in the claimed sale. The Commissioner, asserting deficiencies for each year, disallowed the claimed losses for 1951, 1952 and 1953, on the grounds that the transaction was a partial liquidation and not a sale, and therefore no "loss" could be recognized, (IRC § 115(c) and (i) Treasury Regulations 111, Sec. 29.22(a)–20) and disallowed the claimed deductions for legal, escrow, and accounting expenses. The Tax Court sustained the Commissioner, and the Farmers Union appeals under 26 U.S.C. § 7482 (1954 Internal Revenue Code).

Since 1945 the taxpayer had been trying to sell its merchandising business and restrict itself to operating its real properties. Its president sought out prospective buyers, and there was testimony that there were many offers, none resulting in sale. In 1950 the board of directors proposed dividing the taxpayer into two corporations, with shares in the new corporation distributed on a one-to-one basis to the taxpayer's shareholders. The shareholders approved the plan in November, 1950, but it was dropped. In May, 1951, however, the board adopted a resolution offering to all of the stockholders an opportunity to exchange 8000 shares of the taxpayer's stock for all of the assets in the merchandising business, subject to designated liabilities. The plan, among other things, provided that the taxpayer would give to the transferees a twenty-year lease of the ground floor of the building where the store was located, at an annual rent of $18,000. The stockholders approved the plan at a special meeting on June 7, 1951, and an escrow agent was designated to receive stock certificates from those who elected to surrender stock under the plan. Most stockholders did not elect to participate, but by October 1, 1951 a group of seven had agreed to do so. The hardware assets were not transferred, until the seven had formed a partnership to carry on the merchandising business. On August 16, 1951, the 8000 shares were in escrow but had not yet been surrendered to the corporation. On that date the directors resolved to reduce the taxpayer's stated capital by the amount of the par value of those shares, from $200,000 to $120,-000, and on February 13, 1952, after the shares were surrendered the stockholders at their annual meeting approved the reduction.

The Internal Revenue Code and regulations provide that "no gain or loss is realized by a corporation from the mere distribution of its assets in kind in partial or complete liquidation * * *" (Treasury Regulations 111, § 29.22(a)–20), and define partial liquidation as a "distribution by a corporation in complete cancellation or redemption of a part of its stock * * *" (Internal Revenue Code, § 115(i), 26 U.S.C.A. § 115(i)). But where the corporation disposes of property, other than cash, in return for shares of its own capital stock, the trans-

action may be a sale or exchange, taxable under § 111 of the Internal Revenue Code, 26 U.S.C.A. § 111, rather than a capital transaction, depending upon "the real nature of the transaction, which is to be ascertained from all its facts and circumstances." (Treasury Regulations 111, § 29.22(a)–15; see 7 Mertens, Law of Federal Income Taxation, § 38.29). The Regulations specify the following test: (Treasury Regulations 111, Sec. 29.22 (a)–15)

"[I]f a corporation deals in its own shares as it might in the shares of another corporation, the resulting gain or loss is to be computed in the same manner as though the corporation were dealing in the shares of another. So also if the corporation receives its own stock as consideration upon the sale of property by it, or in satisfaction of indebtedness to it, the gain or loss resulting is to be computed in the same manner as though the payment had been made in any other property. Any gain derived from such transactions is subject to tax, and any loss sustained is allowable as a deduction where permitted by the provisions of the Internal Revenue Code."

■ In sum, if the corporation and the shareholder are dealing at arm's length and the circumstances show that the corporation regards the acquired stock as consideration for a sale, as it would if it acquired money or any other property, there is a taxable sale or exchange. (See Commissioner v. Boca Ceiga Development Co., 3 Cir., 1933, 66 F.2d 1004; Dorsey Co. v. Commissioner, 5 Cir., 1935, 76 F.2d 339; Hammond Iron Co. v. Commissioner, 5 Cir., 1941, 122 F.2d 4; Commissioner v. S. A. Woods Mach. Co., 1st Cir., 1932, 57 F.2d 635). But if the facts show the corporation is dealing with the shareholders primarily as stockholders—as participants in the common business enterprise—there is a capital transaction. (See Dill Mfg. Co. v. Com'r, 39 B.T.A. 1023 (1939); Lucius Pitkin, Inc. v. Commissioner, 13 T.C. 547 (1949).)

■ We think that the Tax Court's finding that there was a partial liquidation, rather than a sale, is amply supported by the evidence. There was none of the care that ordinary businessmen usually show in bargaining. Before the stockholders' special meeting on June 7, 1951, the directors did attach to the notice of the meeting a statement showing the assets and liabilities to be transferred and those to be retained, but the resolution adopted only listed the categories of assets and types of liabilities to be transferred, and the printed "election form", by signing which a shareholder could elect to surrender one or more of his shares, added no additional information. The bill of sale eventually delivered to the partnership was as vague as the resolution, and no value was stated as the total value or per share value of the 8000 shares of stock. Moreover, much in the transaction suggests a re-arranging of the taxpayer's business enterprise. Although the Board of Directors referred to the plan at some times as a "partial liquidation" and at other times as a "sale", the resolution adopted by the shareholders on June 7, 1951 stated that the purpose of the plan was "to effect a division and segregation of the operation, management and maintenance of the real properties of the corporation from the ownership, operation, management and control of the merchandising business of the corporation". The plan provided for a twenty-year lease, and the transfer of the business was not made until the seven shareholders had formed a partnership. The taxpayer's two controlling shareholders, Benson and McEnery, who before the transaction had 75.4% of the taxpayer's stock, retained their control of the taxpayer with 64%, and controlled the partnership by surrendering 7,507 of the 8000 shares. The partnership agreement provided that interests in the partnership shall be according to the contributions of the shareholders. The formal reduction of stated capital is consistent with partial liquidation, but not with the ordinary purchase of the shares. While it is true that the actions of a corporation

after acquisition are not necessarily determinative as to the character of the transaction, (cf. Golden State Theatre & Realty Corporation v. Commissioner, 9 Cir., 1942, 125 F.2d 641; Allyne-Zerk Co. v. Commissioner, 6 Cir., 1936, 83 F.2d 525) they are relevant. (See Dorsey Co. v. Commissioner, supra, 5 Cir., 1935, 76 F.2d 339.) In the principal case they show that the taxpayer envisioned not only a contraction of the business at the time being carried on, but also a contraction of the corporate enterprise.

There was also evidence suggesting a sale, but it is far from being enough to make the Tax Court's finding "clearly erroneous".

In short, we agree with the Tax Court that the "real nature of the transaction" (Reg. 111 § 22.22(a)–15) was a partial liquidation.

■ The Tax Court properly sustained the Commissioner's disallowance of the claimed deductions for legal, escrow, and accounting expenses incurred in effecting the transaction. Expenses incurred for the purpose of changing the corporate structure for the benefit of future operations are not ordinary and necessary business expenses under § 23(a) (1) (A) of the Code, 26 U.S.C.A. § 23(a) (1) (A). (Motion Picture Capital Corporation v. Commissioner, 2d Cir., 1936, 80 F.2d 872; Missouri-Kansas Pipe Line Co. v. Commissioner, 3rd Cir., 1945, 148 F.2d 460; Mills Estate, Inc. v. Commissioner, 2d Cir., 1953, 206 F.2d 244). This is not to say that expenses incurred in carrying out a partial liquidation are never ordinary and necessary business expenses (see Mills Estate, Inc. v. Commissioner, supra, 2 Cir., 1953, 206 F.2d 244; Standard Linen Service, Inc. v. Commissioner, 33 T.C. 1, 7 (1959) ), but the taxpayer has not sustained its burden, for it has conceded both in the Tax Court and on this appeal that the deductibility of the expenses depends solely on whether there was a partial liquidation or sale.

The decision of the Tax Court is affirmed.